■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CHARLES JONES, Appellant. [658 NYS2d 366] —Appeal by the defendant from a judgment of the Supreme Court, Queens County (Spires, J.), rendered February 2, 1995, convicting him of criminal sale of a controlled substance in the third degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is affirmed.

The defendant was arrested in a so-called "buy-and-bust" operation for selling crack cocaine to an undercover police officer. The undercover officer who purchased the narcotics from the defendant testified that as he approached the defendant, the defendant asked if the officer was "looking", i.e., looking to purchase crack cocaine. The officer said he was, and the defendant asked "how many". The officer said "three", and then gave the defendant $15 in prerecorded money in exchange for three red-topped vials. A police department chemist testified that the substances in each of the three vials purchased by the undercover tested positive for the presence of cocaine. Specifically, the chemist testified that the substance in the vials was cocaine hydrochloride, i.e., cocaine in its salt form, and not crack cocaine.

In his own defense, the defendant testified that prior to his arrest, he purchased six vials of crack cocaine and smoked all six at home. The defendant testified that he then refilled all six vials with baking soda, with the intention of selling them as crack cocaine so that he would have money to buy more

crack cocaine for himself. He admitted that he sold three vials to someone for $15 shortly before he was placed under arrest. A police chemist testified for the defense that three orange-topped vials which were found on the defendant's person at the time of his arrest tested negative for controlled substances.

At the close of the People's case, the defendant moved to dismiss the indictment on the ground that the People had failed to prove a prima facie case. The defendant therefore failed to preserve for our review his specific contention on this appeal that the evidence was legally insufficient to prove his intent to sell cocaine (see, People v Gray, 86 NY2d 10, 19-22; People v Bynum, 70 NY2d 858, 859). Nevertheless, viewed in the light most favorable to the prosecution (see, People v Contes, 60 NY2d 620), the evidence was legally sufficient to prove beyond a reasonable doubt that the defendant knowingly and unlawfully sold a narcotic drug to the undercover officer (see, Penal Law § 220.39 [1]). Moreover, upon the exercise of our factual review power, we are satisfied that the jury's verdict was not against the weight of the evidence (see, CPL 470.15 [5]). In this regard, we note that the defendant's claim that he smoked three vials of crack cocaine and refilled them with baking soda to resell was seriously undercut by the testimony of the prosecution's chemist that the substance contained in the three vials which the undercover officer purchased from the defendant was not crack cocaine, but cocaine in its salt form. Rather than testifying merely that he did not test the vials for the presence of crack cocaine, as our dissenting colleagues suggest, the chemist clearly testified that the substance in the vials was not crack cocaine.

The defendant contends that he was denied the opportunity to establish his lack of intent to sell cocaine. Specifically, the defendant argues that the trial court erred in sustaining the People's objections when the defense asked the undercover officer how many grains were usually in a vial of crack cocaine, and when the defense asked the prosecution's police chemist whether the aggregate weight of the contents of the three vials sold by the defendant was a typical sample. The defendant also claims that he should have been permitted to testify that he had previously been arrested for selling substances which later turned out to be baking soda.

At no time during the trial did defense counsel articulate that the trial court's rulings improperly interfered with the ability to present a defense (see, People v Zambrano, 114 AD2d 872). In any event, the defendant was permitted to establish, through the testimony of the undercover officer, that "beat"

was an expression for an innocuous substance which someone sells as if it were a controlled substance. In addition, the defendant testified that he had sold baking soda as crack cocaine in the past. The defendant also elicted testimony from the prosecution's police chemist that the contents of the three vials which the undercover purchased from the defendant had an aggregate weight of one grain, which is approximately equivalent in weight to one-fifth of a tablet of aspirin. This was in contrast to the contents of the three vials which were found on the defendant's person, which had an aggregate weight of 6.2 grains. Defense counsel argued vigorously to the jury that the defendant did not intend to sell cocaine, but that a small quantity of cocaine remained in three of the vials after he emptied them and refilled them with baking soda. In sum, the defendant was allowed to present his defense, and the trial court's rulings did not deny the defendant a fair trial.

The sentence imposed was not excessive (see, People v Suitte, 90 AD2d 80).

The defendant's remaining contentions are without merit. O'Brien, J. P., Copertino and Sullivan, JJ., concur.

Friedmann, J., dissents, and votes to reverse the judgment appealed from and to order a new trial, with the following memorandum in which Goldstein, J., concurs. I respectfully dissent and vote to reverse the judgment appealed from and to order a new trial on the ground that the defendant was improperly prevented from presenting his defense to the jury.

The defendant was charged with criminal sale of a controlled substance in the third degree. At trial, his defense was that he was a crack cocaine addict, and that his custom was to fill the vials of crack cocaine that he had consumed with baking soda for resale on the street. It was by selling such baking soda disguised as crack cocaine that he acquired money to buy more crack cocaine for himself. The defendant contended that the undercover officer in the instant case had purchased three such vials, containing nothing more than a minuscule residue of cocaine from the crack cocaine that he had smoked earlier. In consequence, according to the defendant, he did not knowingly sell a controlled substance to the undercover officer. Rather, his intention had been to sell the officer "beat", or fake, cocaine.

Although the prosecution was allowed to present evidence that the defendant probably watered down the cocaine that he sold by mixing it with baking soda, the defendant was not permitted to testify that on three prior occasions he had been arrested for the sale of drugs, but had subsequently been

released when the subject vials were found not to contain any controlled substance *(see, e.g., People v Rodriguez,* 85 NY2d 586). This "habit evidence" should have been admitted to prove the absence of mistake or accident, as well as to support the defendant's claim that the instant offense was part of his common scheme or plan to sell baking soda in lieu of cocaine *(see, e.g., People v Molineux,* 168 NY 264, 298; *see also, People v Ingram,* 71 NY2d 474; *People v Mascoli,* 166 AD2d 612; Prince, Richardson on Evidence §§ 4-511, 4-512, 4-601 [Farrell 11th ed]). The prior arrests were additionally relevant to the intent element of the crime charged *(People v Levan,* 295 NY 26, 33; *People v Molineux, supra; People v Ellison,* 128 AD2d 720, 721; *People v Singleton,* 21 AD2d 907; *see also, People v Satiro,* 72 NY2d 821; *People v Alvino,* 71 NY2d 233; *People v Watson,* 177 AD2d 676; Prince, Richardson on Evidence § 4-510 [Farrell 11th ed]).

In addition, the court did not permit defense counsel to cross-examine an undercover officer and a police chemist, both of whom had been qualified as experts, as to the quantity of cocaine typically found in a $5 street vial of the sort sold by the defendant. The jurors were therefore denied the information they needed to assess whether the quantity of cocaine sold by the defendant comported with a criminal intention to sell a controlled substance, or was instead more consistent with the theory of the defense that the defendant's sole intention had been to sell baking soda or fake cocaine.

I disagree with the majority's view that the defense was somehow undercut by the testimony of the prosecution's chemist. The chemist merely clarified that he did not test for "crack". As Undercover Officer No. 53 had earlier testified, "crack" is nothing more than a combination of cocaine and baking soda "cook[ed] * * * up" together for sale on the street *(see, e.g.,* Hatsukami and Fischman, *Crack Cocaine and Cocaine Hydrochloride,* Journal of Am Med Assn, Nov. 20, 1996, vol 276, No. 19, at 1580, arguing that because the two compounds are chemically identical, the disparity in Federal sentencing guidelines with respect to their possession is unfair). Rather, the chemist, a scientist, tested the preparation in the defendant's vials for cocaine, which is the only narcotic (and illegal) component of crack cocaine. Significantly, the chemist testified that he did not test the white powder for noncontrolled substances such as baking soda, and he admitted that the powder he examined could have contained significant quantities of baking soda for all he knew. Accordingly, the chemist's discovery that "cocaine hydrochloride salt" was present in the

defendant's vials was not at all inconsistent with the defendant's account that the containers had formerly been filled with a crack preparation of cocaine, of which he had smoked all but a trace residue.

Because the defendant was systematically thwarted in his efforts to establish that the vials recovered from him had contained only a trace residue of controlled substance, his ability to develop his defense was seriously curtailed *(see, e.g., People v Hudy,* 73 NY2d 40). Moreover, the error was compounded by the prosecutor's arguing on summation that the minute quantity of cocaine present in the vials the defendant had sold "means nothing" with respect to his intention to sell a controlled substance, and that if *any* cocaine *at all* was present, the defendant's criminal intention could be deduced. The prosecutor urged the jury to "listen very carefully to the Judge's instructions" on this issue. Thereafter, the court charged that "the weight or purity of the narcotic drug sold" was irrelevant to an assessment of the defendant's guilt, because "[t]he law [Penal Law § 220.39 (1)] speaks of the knowing and unlawful sale of *any* amount of a substance, if that substance in *any degree* contains a narcotic drug" (emphasis supplied). Defense counsel objected to this charge, which indeed effectively directed the jury to reject the defendant's defense and to return a verdict of guilty.

Contrary to the majority's assertion, this entire cluster of issues was adequately preserved for appellate review. Throughout the trial, the defendant never desisted from his efforts to introduce evidence establishing that any drugs found in the vials he had sold to the undercover officer were no more than a trace residue accidentally left behind from the crack cocaine that he had smoked earlier. That the amount of cocaine recovered was too small to evidence an intent to sell a controlled substance was at all times the crux of the defense, and this fact was quite clear to the trial court, whose rulings and instructions "expressly decided the question raised on appeal" (CPL 470.05 [2]). Finally, at the close of the People's case, counsel moved to dismiss the indictment for the prosecution's failure to prove that the defendant had intentionally sold cocaine to an undercover officer.