Charles JONES, Petitioner–Appellee,

v.

James STINSON, Superintendent Great
Meadow Correctional Facility,
Respondent–Appellant.

Docket No. 00–2245.

United States Court of Appeals,
Second Circuit.

Argued: Aug. 10, 2000.

Decided: Oct. 5, 2000.

As Amended Nov. 16, 2000.

Thomas S. Berkman, Assistant District Attorney, Queens County, (Richard A. Brown, District Attorney, Queens County, Gary Fidel, Assistant District Attorney, of counsel), Kew Gardens, New York, for Respondent–Appellant.

Georgia J. Hinde, New York, New York, for Petitioner–Appellee.

Before: CALABRESI, CABRANES, and POOLER, Circuit Judges.

POOLER, Circuit Judge:

## INTRODUCTION

Charles Jones was a crack addict who sometimes engaged in the dangerous practice of selling "beat"[1] to feed his addiction. On March 21, 1994, he was arrested for selling three vials which, combined, contained one grain of cocaine and was charged with the knowing and unlawful sale of a controlled substance in violation of New York Penal Law § 220.39. At trial, Jones testified he intended to sell beat, not cocaine, and any trace amounts of cocaine were residue from the vials' original contents, which he had smoked. After nearly seven hours of deliberation, the jury rejected Jones' testimony and returned a guilty verdict. Jones had previously been arrested as many as four times by the same undercover team and then released when laboratory tests revealed he had not

sold a controlled substance. That evidence was not before the jury, however, because the official arrest records were not obtained by the defense attorney, and because the trial court refused to allow Jones to testify about those previous arrests.

On direct review, an appellate division panel affirmed the conviction by a bare majority, and the Court of Appeals denied leave to appeal. Jones then moved in the United States District Court for the Eastern District of New York (Trager, *J.*) for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d)(1). The district court granted Jones' habeas petition and ordered him released on bail pending retrial[2], holding the appellate division unreasonably applied clearly established federal law in refusing to overturn Jones' conviction on the ground that evidentiary rulings at trial prevented him from presenting a defense. *See Jones v. Stinson*, 94 F.Supp.2d 370, 392–93 (E.D.N.Y.2000).

On appeal, we must decide whether the district court exceeded the narrow confines of habeas review allowed by 28 U.S.C. § 2254, as recently interpreted by the Supreme Court in *Terry Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).[3] We agree with the district court that Jones might have created a reasonable doubt which did not otherwise exist if he were allowed to testify that he had been arrested multiple times in the past for allegedly selling drugs but released each time after lab tests revealed his innocence. Nonetheless, we hold that under section 2254 and *Williams*, it was not objectively unreasonable for the appellate division to conclude that the testimony would not create new grounds for reasonable doubt. The appellate division could

---

1. "Beat" is a non-controlled substance such as baking soda, passed off as though it were a narcotic.

2. This court issued an order on June 6, 2000, staying until after appeal the district court's additional order directing retrial within 60 days.

3. The reader is cautioned that the Supreme Court decided two cases entitled *Williams v. Taylor* on April 18, 2000. *Compare Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (Petitioner Terry Williams), *with Williams v. Taylor*, 529 U.S. 420, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000) (Petitioner Michael Wayne Williams).

have decided that the defendant's additional testimony would, at best, only have bolstered the credibility of his statement that he did not intend to sell drugs in this case.[4] Therefore, for reasons discussed more fully below, we find that the appellate division did not interpret or apply Supreme Court precedent in an objectively unreasonable fashion when it concluded that the trial court's evidentiary rulings did not infringe Jones' constitutional right to present a defense. We reverse the judgment of the district court.

## BACKGROUND

We presume familiarity with the district court's thorough decision. *See Jones*, 94 F.Supp.2d 370.

### A. *The Arrest*

Charles Jones was apprehended in a "buy-and-bust" on March 21, 1994. He sold three vials to an undercover police officer who was pretending to be a drug customer and Jones received three marked five dollar bills. Back-up police officers arrived in a van and arrested Jones, recovering the marked bills and three additional vials. Jones never disputed that he sold an undercover police officer three red-capped vials, which contained a combined total of one grain of cocaine, in exchange for fifteen dollars.[5] Three orange-capped vials found on Jones' person at the time of his arrest contained no illicit substance.

### B. *State court proceedings*

#### 1. *Pre-trial hearing*

Jones appeared before the Supreme Court of the State of New York, Queens County, (Spires, *J.*) on January 10, 1995. At that hearing, Jones' attorney requested records of prior dismissed drug arrests:

> [M]y client informs me that he was arrested by this same ... drug team three times over the last four years. And in each of these cases the ... cases were dismissed because of no controlled substance.

> I would ask at this time that the District Attorney turn over any copies of any files they have related to those arrests.

The district attorney stated that any such arrests were not on the rap sheet and would not be subject to disclosure. Jones' attorney responded that the cases might be in a closed file. The court suggested, "maybe you can provide ... more specificity," to inform the district attorney's search for the records. While the court did not rule at that time whether the prosecution would be obligated to turn over the material to the defense, the district attorney said that "[i]f we are able to locate those files I would be happy to turn it over to the court for an in-camera inspection." No records were ever produced. The records did not surface until Judge Trager requested them in order to resolve the habeas petition. *See Jones*, 94 F.Supp.2d at 375 (citing December 7, 1999, letter from assistant district attorney Nicole Beder) (explaining that records revealed Jones had been arrested at least twice and the charges in both cases were dismissed. In at least one of the cases, charges were dismissed because the lab determined that there was no controlled substance.).[6]

---

4. The official records were not available at the first trial, and, as there is no *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) issue in this case, are not before us now. The only issue before us concerns Jones' own testimony. Thus, we have no occasion to consider whether it would have infringed Jones' constitutional rights if the trial court excluded police records of previous arrests for selling beat.

5. One grain equals .0648 grams; i.e. one gram contains 15.43 grains. Penal Law

§ 220.39 has no minimum-sale requirement, although higher penalties are available for sales over one-half ounce, P.L. 220.41(1), and over two ounces, P.L. 220.43. Under federal sentencing guidelines, Jones would have had to sell 25 grams of non-crack cocaine (385 grains) before leaving the lowest offense level. *See* U.S.S.G. § 2D1.1(c)(14).

6. In light of our disposition of this appeal, we need not decide whether the district court's fact finding was appropriate under *Williams*

*2. Trial*

Defendant's trial began on January 12, 1995. At trial, the crucial issue was whether Jones possessed the requisite criminal intent to sell cocaine, because the defense did not dispute that Jones sold the vials and that the vials contained cocaine. The defense elicited from two undercover officers on cross-examination that "[b]eat is when somebody tries to pass off a substance that is not controlled substance to you, not a drug … as if it were drugs." *Jones,* 94 F.Supp.2d at 375. The court sustained prosecution objections, however, when the defense attorney asked how much cocaine one would expect to find in a five-dollar vial. The police chemist, Ali Hassan, testified that the total weight of the substance recovered from the three vials Jones sold to the undercover officer was one grain, or roughly the weight of one-fifth of an aspirin tablet. Hassan further testified that the tests he administered did not reveal what percentage of the substance found was cocaine and that the cocaine could have been mixed with another substance.

Jones took the stand in his own defense on January 18, 1995. He testified that on the day of the arrest, he smoked six vials of crack cocaine, dumping them one at a time into a glass stem. He then refilled the empty vials with baking soda, planning to sell them for more money to buy crack. Jones contended that any trace amount of cocaine remaining in the vials was left by accident, as he did not wash the vials before reusing them. Although the court sustained several prosecution objections, Jones was allowed to testify he had sold beat in the past. Jones was not allowed to testify, however, about prior arrests and their subsequent dismissals:

> Q. Have you ever been arrested before with respect to items that were baking soda, turned out to be baking soda?

*v. Taylor,* 529 U.S. 420, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000) (requiring petitioner to have made a reasonable attempt to ascertain facts at trial court level).

> [District Attorney]: Objection, Judge.
>
> The Court: Sustained.
>
> [Defense Attorney]: Just one second.
>
> (Whereupon, a brief pause.)
>
> [Defense Attorney]: I have nothing further.[7]

The defense attorney did not inquire as to the nature of the prosecutor's objection or the basis for the court's ruling, nor did he make an offer of proof about what the evidence would show.

After almost seven hours of deliberation, and a request to have instructions and testimony read again, the jury convicted Jones on January 19, 1995, and he was sentenced to an indeterminate term of six to twelve years imprisonment.

*3. Appellate Division affirmance*

The Second Department affirmed Jones' conviction by a vote of 3 to 2. *See People v. Jones,* 239 A.D.2d 602, 658 N.Y.S.2d 366 (2d Dep't 1997). The court dismissed defendant's objection that the evidence was not sufficient to sustain a conviction, finding that he "failed to preserve" the issue and also rejecting it on the merits. *Id.* at 367–368. With regard to the contention that defendant "was denied the opportunity to establish his lack of intent to sell cocaine," the court observed that "[a]t no time during the trial did defense counsel articulate that the trial court's rulings improperly interfered with the ability to present a defense." *Id.* at 368 (citing without explanatory parenthetical *People v. Zambrano,* 114 A.D.2d 872, 494 N.Y.S.2d 904 (2d Dep't 1985) (memorandum decision)).

On the merits of Jones' argument that he was prevented from presenting a defense, the court noted that "the defendant was permitted to establish, through the testimony of the undercover officer, that

7. Jones did admit to a previous felony conviction for burglary, and the prosecution mentioned that conviction in its closing argument as evidence of Jones' lack of credibility.

'beat' was an expression for an innocuous substance which someone sells as if it were a controlled substance." *Jones,* 658 N.Y.S.2d at 368. The court further observed that the police chemist testified as to the minuscule quantity of cocaine found, and that Jones' attorney presented the jury with the theory that residual cocaine remained in the test tubes. *Id.* Having listed the important matters that Jones was able to present to the jury despite the trial court's evidentiary rulings, the appellate division concluded that "the defendant was allowed to present his defense, and the trial court's rulings did not deny the defendant a fair trial." *Id.* The appellate division did not decide whether the trial court's evidentiary rulings were correct.

The dissenting members of the court argued that Jones' objections were "adequately preserved for appellate review," *id.* at 370, and that Jones' testimony about prior arrests should have been admitted at trial as habit evidence or to show a "common scheme or plan to sell baking soda in lieu of cocaine." *Id.* at 369. The dissent further concluded that "[b]ecause the defendant was systematically thwarted in his efforts to establish that the vials recovered from him had contained only a trace residue of controlled substance, his ability to develop his defense was seriously curtailed." *Id.* Leave to appeal to the Court of Appeals was denied by Judge Smith. *See People v. Jones,* 90 N.Y.2d 894, 662 N.Y.S.2d 437, 685 N.E.2d 218 (1997).

### C. *Federal habeas review*

On May 20, 1998, petitioner filed a timely *pro se* petition for a writ of habeas corpus, which contained both exhausted and unexhausted claims. The district court appointed counsel to represent Jones and then reinstated the *pro se* petition by an October 27, 1998, order to show cause. In his reinstated habeas corpus petition, Jones avoided dismissal by asserting only the exhausted claims: (1) that the state trial court prevented him from exercising his constitutional right to present a de-

fense, (2) that the evidence was insufficient to support a conviction, and (3) that the court violated his right to a public trial when it closed the courtroom during the testimony of two undercover police officers. In an admirably complete and thoughtful decision, the district court granted the petition on the ground that the state trial court violated Jones' constitutional right to present a defense by excluding his testimony that he had been arrested in the past for selling beat. *Jones,* 94 F.Supp.2d at 396. The district court rejected Jones' other arguments, and Jones does not advance them on appeal.

### DISCUSSION

We have jurisdiction under 28 U.S.C. § 2253(a), and we review *de novo* the district court's decision to grant a writ of habeas corpus. *See Sacco v. Cooksey,* 214 F.3d 270, 273 (2d Cir.2000); *Chalmers v. Mitchell,* 73 F.3d 1262, 1266 (2d Cir. 1996).

### A. *Adequate and Independent State Ground*

When a state court judgment rests upon an adequate and independent state law ground, federal courts lack jurisdiction on direct review to consider questions of federal law decided by the state court. *See Coleman v. Thompson,* 501 U.S. 722, 728, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). For reasons of comity and federalism, the same doctrine "bar[s] federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." *Coleman,* 501 U.S. at 729–730, 111 S.Ct. 2546. When the state court discusses both state and federal law, however, it can be "difficult to determine if the state law discussion is truly an independent basis for decision or merely a passing reference." *Id.* at 732, 111 S.Ct. 2546.

For administrative convenience, *see id.* at 737, 111 S.Ct. 2546, the Supreme

Court has established a presumption to guide our analysis:

> [Federal courts] will presume that there is no independent and adequate state ground for a state court decision when the decision "fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion."

*Id.* at 734–35, 111 S.Ct. 2546 (quoting *Michigan v. Long,* 463 U.S. 1032, 1040–41, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)); *see also Harris v. Reed,* 489 U.S. 255, 266, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989). In *Harris,* the Court held that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." *Harris,* 489 U.S. at 263, 109 S.Ct. 1038 (internal quotation marks omitted). We apply the *Long/Harris* presumption to the last "reasoned state judgment"—in this case, the appellate division's opinion. *See Ylst v. Nunnemaker,* 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).

██ Relying upon that presumption, we find that we are not barred from reaching the merits of Jones' petition. While the appellate division set forth the factual predicate for a finding of procedural default, it never actually stated that the issue was not preserved. The court instead observed defense counsel·failed to object at trial that "the trial court's rulings improperly interfered with the ability to present a defense." *Jones,* 658 N.Y.S.2d at 368. The court then cited without explanatory parenthetical *People v. Zambrano,* 494 N.Y.S.2d at 905. In *Zambrano,* defense counsel had "failed to discharge his burden of making a specific offer of proof as to the admissibility of the testimony after the People's objection thereto." *Zambrano,* 494 N.Y.S.2d at 905. Therefore the *Zambrano* court concluded that "since the ad-

missability [sic] of the aforesaid testimony could have been resolved by proper offer of proof at trial, the issue cannot be raised for the first time on appeal." *Id.*

The appellate division may have believed that Jones, like Zambrano, was procedurally barred from presenting on' appeal an issue that he did not raise below. However, we follow the presumption established by the Supreme Court and ask not what we think the state court actually might have intended but whether the state court plainly stated its intention. Absent a plain statement, we conclusively presume that the state court did not intend to rely upon state law:

> The *Long* and *Harris* presumption works because in the majority of cases in which a state court decision fairly appears to rest primarily on federal law or to be interwoven with such law, and the state court does not plainly state that it is relying on an independent and adequate state ground, the state court decision did not in fact rest on an independent and adequate state ground. We accept errors in those small number of cases where there was nonetheless an independent and adequate state ground in exchange for a significant reduction in the costs of inquiry.

*Coleman,* 501 U.S. at 737, 111 S.Ct. 2546. For example, in *Harris,* the Court found that the state court had not "clearly and expressly" relied on waiver despite the fact that "[i]n its order, the Appellate Court referred to the 'well-settled' principle of Illinois law that 'those [issues] which could have been presented [on direct appeal], but were not, are considered waived.'" *Harris,* 489 U.S. at 258, 109 S.Ct. 1038 (quoting state court). *Harris* is precisely on point. Like the appellate division in this case, the Illinois court set forth the factual predicate for a finding of waiver but did not clearly state its intention to rely upon that state law ground.

Because the appellate division rested its decision primarily on federal law and did not explicitly state its intention to rely

upon an independent and adequate state ground, we conclude that the district court correctly reached the merits of the habeas petition.

## B. *Merits*

### 1. *Standard of Review*

Jones's habeas corpus petition is governed by 28 U.S.C. § 2254. As amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1218 (codified in scattered titles of the U.S.C.), 28 U.S.C. § 2254 permits a federal court to grant habeas relief only if state court proceedings: "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

█ The Supreme Court recently construed the amended statute so as to give independent meaning to "contrary" and "unreasonable." "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000) (O'Connor, *J.*, writing for the Court in Part II of her opinion).[8]

█ With regard to the less self-explanatory "unreasonable application" inquiry, the Court instructed that "a federal habeas court ... should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 120 S.Ct. at 1521. In determining whether an application was objectively unreasonable, a habeas court does not require that "reasonable jurists would all agree" that the state court erred; on the other hand, "the most important point is that an unreasonable application of federal law is different from an incorrect application of federal law." *Id.* at 1522. Thus, the standard we are to apply falls somewhere between "merely erroneous and unreasonable to all reasonable jurists." *Francis S. v. Stone*, 221 F.3d 100, 109 (2d Cir.2000).[9] In that middle ground, we have cautioned that while "[s]ome increment of incorrectness beyond error is required ... the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Francis S.*, 221 F.3d at 111 (internal quotation marks and citations omitted).

### 2. *Application*

█ We must now decide whether the appellate division's affirmance of Jones' conviction contradicted or constituted an unreasonable application of Supreme Court precedent. We hold the state court decision was not contrary to Supreme Court precedent, because it neither applied a rule of law contradicting Supreme Court precedent, *see Williams*, 120 S.Ct. at 1519, nor arrived at a different conclusion despite "materially indistinguishable" facts. *See id.* at 1519–20. The Supreme Court has not decided the specific circumstances under which a criminal defendant must be allowed to introduce evidence of prior non-criminal conduct to demonstrate that he did not commit the crime at issue.

█ The closer question is whether the appellate division decision was objectively

---

8. The Court was unable to agree on a single majority opinion. Although Justice Stevens authored Parts I, III, and IV of what constitutes the majority view, Justice O'Connor's analysis in Part II of her opinion (which commands a majority) is of particular relevance here.

9. We received and considered Rule 28(j) letters from counsel concerning *Francis S.* and its impact on this case.

unreasonable in light of Supreme Court precedent that the opportunity to present a defense is one of the constitutional requirements of a fair trial. *See, e.g., Crane v. Kentucky,* 476 U.S. 683, 690, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986) ("[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense.") (internal quotation marks and citations omitted); *Rock v. Arkansas,* 483 U.S. 44, 51–53, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987) (right to present defense includes right of defendant to testify). The Supreme Court also instructs that "habeas corpus relief does not lie for errors of state law," *see Estelle v. McGuire,* 502 U.S. 62, 67, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (citations omitted). We must, however, inquire into possible state evidentiary law errors at the trial level in order to ascertain whether the appellate division acted within the limits of what is objectively reasonable in finding no constitutional defect existed in Jones' trial. *Cf. Chambers v. Mississippi,* 410 U.S. 284, 302–03, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973) (erroneous exclusion of evidence amounts to constitutional error if it deprives the defendant of a fundamentally fair trial); *see also Rosario v. Kuhlman,* 839 F.2d 918, 924 (2d Cir.1988) (same).

▮ Specifically, "whether the exclusion of [witnesses'] testimony violated [defendant's] right to present a defense depends upon whether 'the omitted evidence [evaluated in the context of the entire record] creates a reasonable doubt that did not otherwise exist.'" *Justice v. Hoke,* 90 F.3d 43, 47 (2d Cir.1996) (quoting *United States v. Agurs,* 427 U.S. 97, 112, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)). In a close case, "additional evidence of relatively minor importance might be sufficient to create a reasonable doubt." *Agurs,* 427 U.S. at 112, 96 S.Ct. 2392; *Hoke,* 90 F.3d at 47 (same). On habeas review, trial errors are subject to lenient harmless error review. *See Brecht v. Abrahamson,* 507 U.S. 619, 638, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (requiring "substantial and injurious effect or influence in determining the jury's verdict") (internal quotation marks omitted). The creation of otherwise nonexistent reasonable doubt satisfies the "substantial and injurious" standard. *See Kyles v. Whitley,* 514 U.S. 419, 436, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) ("*Agurs* ... opted for its formulation of materiality ... only after expressly noting that this standard would recognize reversible constitutional error only when the harm to the defendant was greater than the harm sufficient for reversal under *Kotteakos [v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)] [the standard adopted by *Brecht* ].").

Under either state or federal evidence law, the trial court probably should have admitted Jones' testimony that he had been arrested and released in the past for selling beat, because prior acts are admissible to show proof of motive, common scheme or plan, and intent. *See People v. Molineux,* 168 N.Y. 264, 293, 61 N.E. 286 (1901) (also codified as Fed.R.Evid. 404(b)). The trial court, however, might have concluded that the evidence would only cause the jury to make a forbidden propensity inference. *See United States v. Scarpa,* 897 F.2d 63, 70 (2d Cir.1990) ("A defendant may not seek to establish his innocence, however, through proof of the absence of criminal acts on specific occasions."). Whether the trial court acted within its discretion in so concluding is a close question. Jones, after all, did not take the stand to establish an uncheckered past—by doing so, he was forced to admit a previous felony conviction for burglary—but to explain that the sale which led to his most recent arrest was part of a longstanding plan of selling beat in order to get money to buy crack cocaine.

Assuming that the testimony should have been admitted and that its exclusion was clear error, viewing the record as a whole, we cannot conclude that it would so certainly have created new ground for reasonable doubt that the appellate division's decision was objectively unreasonable. The defendant testified that he had in the past sold beat and further testimony about arrests, arguably, would have been cumu-

lative. The district court stated that "[b]ecause of the trial court's erroneous ruling, the only evidence that the jury had ... was [Jones'] own testimony.... The jury was entitled to judge, and, no doubt, did judge, this testimony to be too self-serving to be credible." *Jones*, 94 F.Supp.2d at 393. But, even if Jones had been allowed to testify about the previous arrests, the jury still would have had nothing but Jones' word for it. The prosecution's records were not before the court and so would not have reached the jury in any case. Moreover, even if it believed Jones' testimony about previous arrests, the jury could still have concluded the different color tabs on the vials indicated that he had sold both beat and regular cocaine.

## CONCLUSION

On direct review, we might have concluded that Jones' testimony regarding earlier arrests created reasonable doubt that did not otherwise exist. As a habeas court, however, our review is limited to whether the appellate division's ruling was objectively reasonable, not whether it was correct. For the reasons discussed above, we find that the appellate division's decision was objectively reasonable, and, therefore, we vacate the order of the district court and remand to that court for consideration of other claims made by petitioner consistent with this opinion. We hold no view on the merits of any claims that might be raised on remand.