13-3162-cr (L)
United States v. Jill Platt, Donna Bello

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York on the 13th day of April, two thousand fifteen.

Present:     ROSEMARY S. POOLER,
             BARRINGTON D. PARKER,
             RICHARD C. WESLEY,
                  *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

                  *Appellee*,

         v.                                          13-3162-cr (L),
                                                     13-3303-cr (Con)

JILL PLATT, DONNA BELLO,

                  *Defendants-Appellants.*[1]

_____

Appearing for Appellants:     Alexandra A.E. Shapiro (James Darrow, Chetan Patil, *on the brief*), Shapiro, Arato & Isserles LLP, New York, N.Y., *for Appellant Jill Platt*.

                              Norman Pattis (Daniel Erwin, *on the brief*), Pattis Law Firm, LLC, Bethany, CT, *for Appellant Donna Bello*.

_____

[1] The Clerk of Court is to amend the caption as above.

Appearing for Appellee:     Douglas P. Morabito, Assistant United States Attorney for the District of Connecticut (Peter S. Jongbloed, Assistant United States Attorney, Marc H. Silverman, Assistant United States Attorney, Dierdre M. Daly, United States Attorney, *on the brief*), New Haven, CT.

Appeal from the United States District Court for the District of Connecticut (Thompson, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgments of conviction be and they hereby are **AFFIRMED**, but the defendants' sentences are **VACATED**, and the case is **REMANDED** to the district court for resentencing.

Appellants-defendants Jill Platt and Donna Bello organized, and participated in, what they referred to as "gifting tables" or simply "tables." Comprised of exclusively female membership, the tables were structured as exponentially expanding pyramids, with one individual poised at the apex of a table (the "dessert"), two occupying the row below (the "entrees"), four in the following tier (the "soup and salads"), and finally eight at the base (the "appetizers"). In order to join a table, new members began as appetizers and were required to "gift" $5,000 to the dessert. With a full table the dessert received a total of $40,000, and the table would bud off into two new tables with all existing participants shifting up a level. New women would be recruited to fill the bottom rank of the two newly-minted tables.

After a joint trial, Platt was convicted of one count of conspiracy to defraud the Internal Revenue Service ("IRS"), in violation of 18 U.S.C. § 371, one count of filing a false tax return, in violation of 26 U.S.C. § 7206(1), four counts of wire fraud, in violation of 18 U.S.C. § 1343, and one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349. She appeals from the district court's August 15, 2013 judgment of conviction, sentencing her principally to 54 months' imprisonment. Bello appeals from the district court's August 15, 2013 judgment, convicting her of one count of conspiracy to defraud the IRS, two counts of filing a false tax return, eleven counts of wire fraud, and one count of conspiracy to commit wire fraud, and principally sentencing her to 72 months' imprisonment. We assume the parties' familiarity with the procedural history, specification of issues for review, and underlying facts, which we recount here only to the extent necessary to explain our decision.

On appeal, defendants contend that the government's use of peremptory strikes to eliminate female members of the venire violated *Batson v. Kentucky*, 476 U.S. 79 (1986); the district court abused its discretion by admitting the testimony of attorney William O'Connor and by declining to compel immunity for three defense witnesses, thereby also violating defendants' constitutional right to present a defense; and the district court abused its discretion in admitting the expert testimony of Dr. Kenneth Kelly. We find these arguments to be without merit and accordingly affirm the judgments of conviction. However, defendants also challenge their sentences, contending that the district court penalized them for exercising their right to trial and imposed sentences that were otherwise procedurally and substantively unreasonable. We find that the district court erred by failing to make the particularized findings required by *United States v. Studley*, 47 F.3d 569 (2d Cir. 1995), and remand the case for resentencing.

2

**I. *Batson* Claim**

The Supreme Court has held under *Batson* and its progeny that the Equal Protection Clause prohibits the government from using its peremptory challenges to exclude potential jurors for a discriminatory purpose. *See* 476 U.S. at 89; *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 146 (1994) (extending *Batson* to discrimination in the selection of jurors on the basis of gender). Under *Batson*'s three-step burden-shifting framework, if a party objecting to a peremptory challenge establishes a prima facie case of discrimination, the opposing party must then provide a neutral justification for the exercise of the challenge. *United States v. Douglas*, 525 F.3d 225, 238 (2d Cir. 2008) At the third step, the trial court must determine whether the objecting party has met its ultimate burden to demonstrate that the peremptory challenge was the result of purposeful discrimination. *Id.* Because a trial court's finding as to the intent underlying the use of a peremptory challenge rests principally upon a credibility assessment, we ordinarily accord that determination "great deference" and review it only for clear error. *Hernandez v. New York*, 500 U.S. 352, 364–65 (1991). "'Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.'" *United States v. English*, 629 F.3d 311, 319 (2d Cir. 2011) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985)).

Defendants argued to the district court that the government used its peremptory strikes to exclude female members of the venire on the basis of gender. In response, the district court elicited gender-neutral explanations from the government for exercising these strikes. While the district court might have more clearly expressed whether it credited each of the government's explanations, the court sufficiently complied with its obligation to adjudicate explicitly defendants' *Batson* challenge. *See Messiah v. Duncan*, 435 F.3d 186, 199 (2d Cir. 2006) (finding district court "unequivocally stated" its acceptance of prosecutor's strikes, thereby satisfying third *Batson* step, where it was "evident that the trial judge did not discredit or find unpersuasive the prosecutor's race-neutral explanations"); *see also McKinney v. Artuz*, 326 F.3d 87, 100 (2d Cir. 2003) ("Although reviewing courts might have preferred the trial court to provide express reasons for each credibility determination, no clearly established federal law required the trial court to do so."). On appeal defendants contend that the district court erred in determining that the government's proffered reasons were not pretexts for gender discrimination. We disagree.

The district court did not clearly err in crediting the government's explanations for exercising its peremptory strikes against female venire members and denying defendants' *Batson* challenge. Given the nature of the defendants' scheme, it was not impermissible for the district court to credit the government's explanation that the struck female venire members had a close family member with a negative experience with the IRS or were potentially sympathetic to defendants because of their employment, *see United States v. Alvarado*, 951 F.2d 22, 24–25 (2d Cir. 1991) (affirming the district court's finding type of employment an acceptable race-neutral basis for peremptory strike), or regular contact with individuals convicted of crimes, including embezzlement. Nor was it impermissible to credit the government's use of a peremptory strike on a juror who expressed difficulty in reaching decisions. *See Snyder v. Louisiana*, 552 U.S. 472, 477 (2008) (recognizing that determinations of "demeanor lie peculiarly within a trial judge's province") (internal quotation marks omitted). While other members of the venire shared some related issues, they did not compare to those of the jurors who were excluded. The district court was permitted to find that the prosecutor's statements were plausible grounds for exercising the

3

government's peremptory strikes, and were not a pretext for discrimination. *See Hernandez*, 500 U.S. at 365 ("As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies peculiarly within a trial judge's province.") (internal quotation marks omitted).

## II. Admission of O'Connor Testimony

Defendants next argue that the district court abused its discretion in permitting William O'Connor, a tax attorney, to testify, in supposed violation of Fed. R. Evid. 401, 402, and 403, about advice he provided to third parties about the legality of the gifting tables. Ordinarily, we defer to a district court's evidentiary rulings, and reverse only for an abuse of discretion. *United States v. Cuti*, 720 F.3d 453, 457 (2d Cir. 2013). "To find such abuse, we must conclude that the trial judge's evidentiary rulings were arbitrary and irrational." *United States v. Mercado*, 573 F.3d 138, 141 (2d Cir. 2009) (internal quotation marks omitted). Because defendants failed to lodge a relevant objection to preserve this issue for appeal, this claim is subject to plain error analysis.

O'Connor testified that he informed a group of gifting table participants, including Eileen Brennan, and possibly Nancy Dillon, Ann Jordan, and Joan Collins, that the $5,000 payments received by a dessert were not gifts but in fact would be considered taxable payments by the IRS. He further stated that he had not supplied any legal advice to defendants directly nor did he know if his statements had been conveyed to them.

This evidence was undoubtably relevant because it tended to undermine defendants' good faith defense that they relied on the advice of attorneys, transmitted by other gifting table participants, that the tables were operating legally. We have noted that "[e]vidence of others' knowledge" may be "highly relevant [where it] ha[s] . . . been supplemented by evidence supporting the conclusion that such knowledge was communicated to [the defendant]." *United States v. Kaplan*, 490 F.3d 110, 121 (2d Cir. 2007). Here there was evidence that third parties present at the meeting with O'Connor communicated with defendants about the advice received.

However, the district court may exclude even relevant evidence "if its probative value is substantially outweighed by [the] danger of . . . unfair prejudice." Fed. R. Evid. 403. The testimony here was of limited probative value as the government did not offer evidence that the third parties actually conveyed their knowledge of the gifting tables' *illegality* to defendants. *See Kaplan*, 490 F.3d at 120 ("[E]vidence regarding the knowledge of individuals other than the defendant should be admitted only if there is some other evidence in the record . . . from which to conclude that the defendant would have the *same knowledge*.") (emphasis added).

However, we are not persuaded that the limited probative value of this testimony was substantially outweighed by the danger of unfair prejudice. Unfairness does not result from the tendency of evidence to disprove a party's case but refers instead to an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403 advisory committee's note. Unlike *Kaplan*, the jury here was not "required to draw a series of inferences, unsupported by other evidence," to connect O'Connor's testimony to defendants' own knowledge. *Kaplan*, 490 F.3d at 122. A jury, crediting O'Connor's veracity as a witness, could reasonably infer that Brennan, who was an active participant in the gifting table

4

scheme would have accurately conveyed O'Connor's advice when discussing it with defendants. "The logical inferences resulting from proffered evidence do not engender the unfair prejudice against which Rule 403 is directed." *United States v. Diaz*, 878 F.2d 608, 615 (2d Cir. 1989) (internal quotation marks omitted). Accordingly, we detect no plain error in the district court's admission of this testimony.

### III. Refusal to Compel Immunity for Defense Witnesses

Defendants also argue that the district court erred in refusing to compel the government to extend immunity to three defense witnesses—Brennan, Dillon, and Deanne Capotosto. The testimony of these witnesses, defendants claim, would have rebutted the testimony of O'Connor and Edward Marcus, an attorney who testified that he never advised gifting table participants that the tables were legal, and would have generally bolstered defendants' good faith defense.

We review a district court's decision not to compel immunity for abuse of discretion, and consider whether "(1) the government has engaged in discriminatory use of immunity to gain a tactical advantage or, through its own overreaching, has forced the witness to invoke the Fifth Amendment; and (2) the witness' testimony will be material, exculpatory and not cumulative and is not obtainable from any other source." *United States v. Ebbers*, 458 F.3d 110, 118 (2d Cir. 2006) (internal quotation marks omitted). So "few and exceptional" are the situations in which the government is required to grant immunity to defense witnesses that "in the nearly thirty years since establishing a test for when immunity must be granted, we have yet to reverse a failure to immunize." *United States v. Ferguson*, 676 F.3d 260, 291 (2d Cir. 2011). Nor does this case present such a situation.

Evidence before the district court indicated that Brennan, Dillon, and Capotosto were potentially subject to prosecution for their participation in the gifting tables, which is a legitimate reason to decline to compel immunity. Brennan and Dillon had each received a letter from the government informing them that they were targets of federal investigation. In addition, the district court determined that Capotosto's potential criminal liability was evident from secretly recorded conversations of gifting table participants, her admissions to government investigators, and her grand jury testimony. It is well established that "[t]he Government may reasonably refuse to grant immunity where a witness is a potential target of criminal prosecution." *United States v. Rosen*, 716 F.3d 691, 704 (2d Cir. 2013) (declining to reverse failure to immunize where district court found witness was "at a very minimum, . . . prosecutable for tax evasion arising out of the same general bundle of events . . . that [we]re involved in th[at] case") (internal quotation marks omitted). Nor, in any event, was there any convincing evidence of prosecutorial overreaching or manipulation of the immunity device for tactical advantage. Accordingly, we find that the district court did not abuse its discretion in declining to compel the government to immunize defendants' witnesses.

### IV. Right to Present a Defense

Defendants contend that they were denied the right to present a complete defense when the district court failed to compel the government to immunize their witnesses but admitted O'Connor's testimony.

5

A criminal defendant has "a fundamental due process right to present a defense." *United States v. Mi Sun Cho*, 713 F.3d 716, 721 (2d Cir. 2013). However, this right "is not absolute, for a defendant must comply with established rules of procedure and evidence designed to assure both fairness and reliability," *id.* (internal quotation marks omitted), "and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Williams v. Lord*, 996 F.2d 1481, 1483 (2d Cir. 1993) (internal quotation marks omitted). The erroneous exclusion of evidence violates a defendant's federal constitutional right to present a defense only if "the omitted evidence evaluated in the context of the entire record creates a reasonable doubt that did not otherwise exist." *Jones v. Stinson*, 229 F.3d 112, 120 (2d Cir. 2000) (brackets and internal quotation marks omitted).

Even assuming arguendo that the government should have been compelled to immunize defendants' witnesses, we conclude that the testimony would not have created reasonable doubt that did not otherwise exist. The government presented substantial evidence including direct testimony, emails, and meeting notes from which the jury could have concluded that defendants knew that gifting table payments were taxable income. We find therefore no violation of defendants' right to present a defense.

**V. Admission of Kelly Testimony**

Defendants assert that, in violation of Fed R. Evid. 704(b) and 403, expert witness Dr. Kenneth Kelly offered an inadmissible legal opinion and impermissibly testified to defendants' mens rea, and further that the probative value of his testimony was substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury.

The decision of the district court to admit or exclude expert testimony is reviewed for an abuse of discretion and will not be set aside unless the ruling was manifestly erroneous. *United States v. Williams*, 506 F.3d 151, 159–60 (2d Cir. 2007). We have noted that "Rule 403 determinations command especial deference because the district court is in the best position to do the balancing mandated by Rule 403." *United States v. Al Kassar*, 660 F.3d 108, 123 (2d Cir. 2011) (internal quotation marks omitted).

Under Fed. R. Evid. 704, an expert witness may neither testify to a legal conclusion, *see Hygh v. Jacobs*, 961 F.2d 359, 363–64 (2d Cir. 1992), nor expressly state a "final conclusion or inference as to a defendant's actual mental state at the time of a crime," *United States v. DiDomenico*, 985 F.2d 1159, 1164 (2d Cir. 1993) (internal quotation marks omitted). Such testimony is prohibited because it "poses a uniquely heightened danger of intruding on the jury's function." *Id.*

Defendants concede that Dr. Kelly did not refer to the gifting tables as illegal or fraudulent and they fail to point to any of his remarks expressly stating or inferring defendants' knowledge of the tables' illegality. In his testimony Dr. Kelly opined, based solely upon literature produced by defendants and other table participants, that the structure of the gifting tables met the definition of a pyramid scheme, but he acknowledged that his opinion was not based upon the actual operation of the tables nor on the conduct of the individuals involved. In so doing Dr. Kelly neither impermissibly relied "directly upon the language of the statute and accompanying regulations" under which defendants were charged, *United States v. Scop*, 846

6

F.2d 135, 140 (2d Cir. 1988), nor drew "conclusions as to the significance of [defendants'] conduct or evidence in the particular case," *United States v. Boissoneault*, 926 F.2d 230, 233 (2d Cir. 1991). Similarly, it is clear that Dr. Kelly's testimony did not "stat[e] the bottom-line inference" that defendants knew the tables were illegal. *DiDomenico*, 985 F.2d at 1165. We conclude that the district court did not abuse its discretion in admitting Dr. Kelly's testimony, and find no merit in the argument that the probative value of his testimony was substantially outweighed by the factors defendants identified.

## VI. Challenges to Sentencing

Finally, defendants challenge their sentences on several grounds. They argue that the district court miscalculated the loss amounts used to calculate their Guidelines base offense levels, failed to consider two bases for downward departure, punished them for exercising their right to go to trial, and imposed substantively unreasonable sentences.

## Loss Amount

Defendants contend that their sentences should be vacated because the district court improperly calculated the intended loss amount by (1) failing to make the particularized finding required by *Studley* and U.S.S.G. § 1B1.3(a)(1)(B), and (2) including gains to non-co-conspirators and gain amounts that were not actual losses in the loss calculation.

We review district court sentencing decisions for procedural reasonableness under a "deferential abuse-of-discretion standard." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (internal quotation marks omitted). As we have explained, "[a] district court commits procedural error where it fails to calculate (or improperly calculates) the Sentencing Guidelines range . . . ." *United States v. Robinson*, 702 F.3d 22, 38 (2d Cir. 2012).

Under Section 1B1.3(a)(1)(B) "[a] district court may sentence a defendant based on the reasonably foreseeable acts and omissions of his co-conspirators that were taken in relation to a conspiracy." *United States v. Getto*, 729 F.3d 221, 234 (2d Cir. 2013). However, to hold a defendant accountable for jointly undertaken criminal activity, a district court must first "make a particularized finding of the scope of the criminal activity agreed upon by the defendant" and, in addition, make a particularized finding that relevant co-conspirator conduct was foreseeable to the defendant. *Studley*, 47 F.3d at 574.

At sentencing, the district court committed procedural error by failing to make particularized findings concerning whether the conduct of other gifting table participants fell within the scope of defendants' agreement, and whether this conduct was foreseeable to defendants. The district court relied on a spreadsheet prepared by the government that listed gains to other table participants, but excluded individuals who lacked an "established association"—or "material connection" in the district court's understanding—with defendants. The court further excluded gains to individuals where "it was unclear whether they were operating substantially independently" of defendants, and only partially including gains where "it was unclear whether part of the[] foreseeable gains [of other table participants] should be excluded." The court thereby eliminated from the loss amount calculation gains to some participants with apparently tenuous connections to defendants but neither explained what constituted a material connection nor clearly indicated whether the gains attributed to defendants

were foreseeable. Accordingly, we conclude that the district court's findings did not comply with the requirement of *Studley* to make particularized findings relating to "the scope of the specific conduct and objectives *embraced* by the defendant[s'] agreement," *Studley*, 47 F.3d at 574 (quoting U.S.S.G. § 1B1.3, cmt. n. 2) (emphasis omitted), and "as to whether the activity was foreseeable to the defendant[s]," *id.*

Although we remand for the district court to make particularized findings, consistent with our decision in *Studley*, we harbor significant doubts regarding whether all of the women whose gain was used to calculate defendants' loss amounts were properly considered members of the fraud conspiracy. As we have noted "the scope of conduct for which a defendant can be held accountable under the sentencing guidelines is significantly narrower than the conduct embraced by the law of conspiracy." *Getto*, 729 F.3d at 234 n.11 (internal quotation marks omitted). For the purposes of sentencing, mere "knowledge of another participant's criminal acts" or "of the scope of the overall operation" does not make a defendant criminally responsible and it is less likely that an activity was jointly undertaken if the participants worked independently and did not "pool their profits and resources." *See Studley*, 47 F.3d at 575.

We decline the government's invitation to affirm the loss calculation under Section 1B1.3(a)(1)(A), which provides that "acts . . . committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction" are to be considered in calculating a defendant's base offense level. U.S.S.G. § 1B1.3(a)(1). While defendants supervised, trained, and otherwise interacted with many gifting table participants, the record evidence is insufficient to conclude that defendants aided or abetted all of the individuals whose conduct was attributed to them for purposes of calculating the loss amount.

Accordingly, defendants' sentences are vacated and the case is remanded to the district court to make particularized findings, consistent with our decision in *Studley*, relating to the scope of the conspiracy defendants agreed to and the foreseeability of the gains caused by other gifting table participants, and to recalculate the total amount of loss attributable to each defendant. Because we remand this case, we do not reach defendants' other challenges to the procedural and substantive reasonableness of their sentences.

We have considered the remainder of defendants' arguments and find them to be without merit. Accordingly, we AFFIRM the judgments of conviction but VACATE the defendants' sentences and REMAND the case to the district court for resentencing.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

8