Edwin GALARZA, Petitioner–
Appellant,

v.

John P. KEANE, Sing Sing
Correctional Facility,
Respondent–Appellee.

Docket No. 97–2607.

United States Court of Appeals,
Second Circuit.

Argued July 13, 2000.

Decided June 8, 2001.

Julia Pamela Heit, New York, NY, for petitioner-appellant.

Efrem Z. Fischer, Assistant Attorney General (Eliot Spitzer, Attorney General of the State of New York, Edward Johnson, Deputy Solicitor General, Michael S. Belohlavek, Assistant Solicitor General, on the brief), New York, NY, for respondent-appellee.

Before WALKER, Chief Judge, POOLER, and SOTOMAYOR, Circuit Judges.

Chief Judge WALKER dissents in a separate opinion.

SOTOMAYOR, Circuit Judge:

Petitioner-appellant Edwin Galarza ("Galarza") appeals from a judgment of the United States District Court for the Southern District of New York (McKenna, *J.*) denying his petition for a writ of habeas corpus. The district court held, *inter alia*, that Galarza failed to show that the prosecutor's exercise of peremptory challenges to strike Hispanic members of the *venire* at trial violated Galarza's constitutional rights under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). We find that the trial court correctly determined that his claims as to two potential jurors lacked merit. With respect to Galarza's three remaining *Batson* claims,

we find that the trial court failed to rule whether it credited the race-neutral explanations proffered by the prosecutor before denying the challenges. We therefore vacate the district court's denial of Galarza's habeas petition and remand his *Batson* claims as to these three prospective jurors for further proceedings consistent with this opinion.

## BACKGROUND

Galarza, a Hispanic individual, was tried before a jury in a New York State court on various narcotics charges. Jury selection began on February 14, 1989. The first panel of jurors consisted of eighteen individuals, and after *voir dire*, the prosecutor used her peremptory challenges to strike eleven members of the *venire*. Defense counsel objected, stating:

> For the record, Judge, I know that the District Attorney has been systematically taking off blacks and [H]ispanics.... She intimated that the defendant would want [H]ispanics, after seeing her peremptory challenges, it seems clear to me that she is knocking off as many minority members [as she can].... For the record, Adelpho Felix was knocked off, Aurea Valez was knocked off, Edwardo Vasquez was knocked off, David Vargas was knocked off, Catherine Rodriguez was knocked off.... Every [H]ispanic was knocked off peremptorily.

The trial court responded, "Six [H]ispanics. Is there anything the People wish to say?" The prosecutor responded that she did not assume that Felix was Hispanic and that "[t]he only person that I think is obviously [H]ispanic in just talking to her, as to whether they speak Spanish[,] was Ms. Valez." The prosecutor then proffered the following reasons for striking the

remaining four prospective jurors that Galarza had identified:

> My reason for [striking Ms. Valez] off— I thought she had a problem understanding. I think it was communicated when she was up at the bench yesterday during the initial discussions. Mr. Vasquez, also clearly in my impression, had a problem understanding. He seemed somewhat confused yesterday when he came up to the bench and he was somewhat confused today when you asked him point blank questions about certain things, he would say no, then he would go ahead and answer in the affirmative. Again, that was my reason for striking him from the panel.
>
> Mr. Vargas seemed very soft spoken and I, on a personal [level], did not feel comfortable with that juror. Again, my basis was not because he was Hispanic.
>
> Who is left? [My reason for striking] Ms. Rodriguez was that she equivocated on the issue whether she could be fair and impartial. She thought she could be fair. My impression of that was that she really had no position one way or the other. She would try to be fair but she wasn't sure and that was the basis for striking her from the panel.

Defense counsel objected to the reason proffered by the prosecutor for striking Rodriguez. Counsel argued that the court had commended Rodriguez's answer about being fair and impartial and that the prosecutor could have struck Rodriguez for cause if she truly believed Rodriguez could not be fair. Co-defendant's counsel [1] then reiterated the challenges as to the other individuals, stating that the prosecutor had used her peremptory challenges against

1. Prior to jury selection, the trial judge informed all defense counsel that he would assume that all defense applications were made jointly unless otherwise noted. Because Galarza's counsel did not note otherwise, we presume that Galarza joined in this second objection.

everyone in the jury box who had a Hispanic surname:

[W]ith respect to all of the individual names, Felix, Valez, Vasquez, Vargas, Garcia—I am sure I have forgotten one along here, but I think it's patently clear that these are people with [H]ispanic names. I think that each one of them has been systematically excluded in the first round by the Assistant District Attorney. I submit this is unfair and I object. . . .

The trial court then ruled on the challenges:

In *Batson v. Kentucky*, the Supreme Court essentially described what [the] test is at this juncture and described that the trial judge has certain responsibilities with respect to fairness. I am mindful of those—let me tell you what my perceptions are and clearly, I will watch this in the future.

Vasquez and Valez did join the line yesterday and came up. When I asked them what would you like to say, they looked at me clearly not knowing why they were there. . . . I had forgotten that. When the Assistant described that, that is clearly what happened.

Vargas could have been excused by either side, [because] Vargas is suing the Police Department because he was falsely arrested apparently by two New York City Police officers.

I am mystified that somebody who is in this line of work, doesn't know Felix a[sic] Hispanic name.[2] Since I am satisfied at least three of them have certain articulable [sic] reasons, I am not going to stop the trial. I am not going to force one or all of these people who were challenged to be seated over prosecution's objections.

We will all pay attention. We will see what happens next.

Jury selection continued and concluded the following day. Defense counsel raised no further challenges to the prosecutor's exercise of peremptory challenges. On May 24, 1989, the jury found Galarza guilty of numerous narcotics offenses.

Galarza appealed his conviction to the Appellate Division, First Department, claiming, *inter alia*, that he was denied equal protection of the law because the prosecutor exercised her peremptory challenges in a racially discriminatory manner. The Appellate Division rejected Galarza's claim, stating that "[t]o the extent that either defendant has preserved a record of the jury selection *voir dire*, we agree with the trial court that the prosecutor provided racially neutral reasons for the exercise of peremptory challenges as to each strike at issue." *People v. LaFontaine*, 190 A.D.2d 609, 610, 594 N.Y.S.2d 986 (N.Y.App.Div., 1st Dept.1993). Chief Judge Kaye of the Court of Appeals denied Galarza's leave to appeal, *People v. Galarza*, 81 N.Y.2d 1014, 600 N.Y.S.2d 202, 616 N.E.2d 859 (1993), and denied it again on reconsideration, *People v. Galarza*, 82 N.Y.2d 718, 602 N.Y.S.2d 815, 622 N.E.2d 316 (1993).[3]

On December 21, 1995, Galarza filed, *pro se*, the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging, *inter alia*, that his due process and equal protection rights were violated under *Batson* by the prosecutor's use of her peremptory challenges to strike Hispanic

---

**2.** The parties disagree whether the trial judge was chiding defense counsel for not knowing that Felix was not a Hispanic surname or the prosecutor for not knowing that it was.

**3.** Unrelated to the claims addressed in this appeal, Galarza subsequently applied to the Appellate Division, First Department for a writ of error *coram nobis*, which the Appellate Division denied, *People v. LaFontaine*, 219 A.D.2d 885, 631 N.Y.S.2d 515 (N.Y.App.Div., 1st Dept.1995), and Chief Judge Kaye of the Court of Appeals denied leave to appeal, *People v. Galarza*, 86 N.Y.2d 873, 635 N.Y.S.2d 954, 659 N.E.2d 777 (1995).

individuals from the *venire*. The district judge referred the petition to a magistrate judge for a report and recommendation. The magistrate judge recommended that the habeas petition be denied. The magistrate judge determined that Galarza's counsel had waived Galarza's *Batson* challenges by failing to pursue them during *voir dire*. Assuming *arguendo* Galarza's *Batson* claims were not waived at trial, the magistrate judge found that Galarza had preserved for appellate review challenges to only three prospective jurors—Garcia, Rodriguez, and Vargas—and that the trial court had credited the prosecutor's race-neutral explanations for striking each of those individuals. Galarza filed timely objections to the magistrate judge's report and recommendation. The district court adopted the report and recommendation, denied the writ and dismissed the habeas petition, and granted a certificate of appealability on the issue of whether the prosecutor's use of peremptory challenges violated *Batson*. Galarza filed a timely notice of appeal.

## DISCUSSION

### I. *Standard of Review*

We review a district court's ruling on a petition for a writ of habeas corpus *de novo*. *See English v. Artuz*, 164 F.3d 105, 108 (2d Cir.1998). Because a trial court's determination of whether a juror was struck for a discriminatory reason turns largely on the judge's observations of the attorneys and prospective jurors and an evaluation of their credibility, "a reviewing court ordinarily should give those findings great deference." *Hernan-*

*dez v. New York*, 500 U.S. 352, 364, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991). More particularly, when reviewing a *Batson* challenge in the context of a habeas petition, a trial court's conclusion that a peremptory challenge was not exercised in a discriminatory manner is entitled to a presumption of correctness, except, *inter alia*, to the extent that the trial court did not resolve the factual issues involved in the challenge or if the finding is not fairly supported by the record. *See* 28 U.S.C. §§ 2254(d)(1) (presumption of correctness not applicable if "the merits of the factual dispute were not resolved in the State court hearing") and (d)(8) (1994) (presumption of correctness not applicable if state court's "factual determination is not fairly supported by the record");[4] *see also Purkett v. Elem*, 514 U.S. 765, 769, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) ("[T]he factual findings of state courts are presumed to be correct, and may be set aside, absent procedural error, only if they are not fairly supported by the record.") (internal quotation marks omitted); *Washington v. Schriver*, 240 F.3d 101, 110 (2d Cir.2001) (stating that the factual findings of state trial and appellate courts are entitled to a presumption of correctness absent special circumstances, including a determination that the factual finding is not fairly supported by the record).

### II. *The Batson Standard*

The Supreme Court has set forth a three-part test trial courts are to employ when evaluating whether a party exercised a peremptory challenge in a discriminatory manner. *See Batson*, 476 U.S. at 96–98,

---

**4.** The law governing habeas corpus petitions, 28 U.S.C. § 2254, was amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, which went into effect on April 24, 1996. 28 U.S.C. § 2254 (Supp.2000). The pre-AEDPA presumption of correctness standards set forth in § 2254(d) are now contained in §§ 2254(d)(2)

and (e). Because Galarza filed his habeas petition before the effective date of AEDPA, we evaluate his claims under pre-AEDPA standards. *See Tankleff v. Senkowski*, 135 F.3d 235, 243 & n. 1 (2d Cir.1998) (applying unamended 28 U.S.C. § 2254(d) to a petition filed prior to effective date of AEDPA).

106 S.Ct. 1712. First, a trial court must decide whether the party challenging the strike has made a *prima facie* showing that the circumstances give rise to an inference that a member of the venire was struck because of his or her race. Such a *prima facie* case may be established, for example, by showing a pattern of strikes against minority prospective jurors. *See id.* at 97, 106 S.Ct. 1712. This Court has held that "Hispanics are a cognizable group for purposes of the first step of the *Batson* inquiry." *United States v. Rudas*, 905 F.2d 38, 41 (2d Cir.1990).

▆ If the party making the *Batson* challenge establishes a *prima facie* case, the trial court must require the non-moving party to proffer a race-neutral explanation for striking the potential juror. *See Batson* at 97, 106 S.Ct. 1712. This second step does not require the party to give an explanation that is persuasive or even plausible. *See Purkett*, 514 U.S. at 768, 115 S.Ct. 1769.

▆ Finally, if the non-moving party proffers a race-neutral explanation, the trial court must determine whether the moving party has carried his or her burden of proving that the strike was motivated by purposeful discrimination. *See Batson* at 98, 106 S.Ct. 1712. "[T]he third step of the *Batson* inquiry requires a trial judge to make an ultimate determination on the issue of discriminatory intent based on all the facts and circumstances." *Jordan v. Lefevre*, 206 F.3d 196, 200 (2d Cir.2000) (internal quotation marks omitted). At this third step, the persuasiveness of the race-neutral explanation is relevant. *See*

*Purkett*, 514 U.S. at 768, 115 S.Ct. 1769. We have repeatedly emphasized that a trial court may not deny a *Batson* motion without determining whether it credits the race-neutral explanations for the challenged peremptory strikes. *See Jordan*, 206 F.3d at 200 (stating that it is "error for the trial court to deny a *Batson* motion without explicitly adjudicating the credibility of the non-moving or challenging party's race neutral explanations for its action in peremptorily striking potential jurors"); *Barnes v. Anderson*, 202 F.3d 150, 156–57 (2d Cir.1999) (stating that "[w]here a court fails to make such a [credibility] finding with respect to the proffered explanation for *each challenged strike*, the appropriate course usually will be to remand for findings by the court as to the challenged strikes and an ultimate determination on the issue of discriminatory intent based on all the facts and circumstances") (emphasis added) (internal quotation marks and alterations omitted); *United States v. Alvarado*, 923 F.2d 253, 255–56 (2d Cir.1991) (remanding *Batson* challenge to trial court where it failed to make findings as to whether it credited prosecutor's explanations for two of the four strikes challenged by defendant).

### III. *Waiver*

▆ The magistrate judge determined that Galarza's *Batson* claims were waived by his counsel's failure to pursue the challenges during *voir dire*. We disagree that defense counsel waived Galarza's *Batson* challenges as to prospective jurors Felix, Valez, Vasquez, Vargas, and Rodriguez.[5] Defense counsel specifically

---

5. Galarza also raises before us arguments regarding his alleged *Batson* challenge to the prosecutor's striking of a prospective juror named "Garcia." It is unclear from the record, and the parties disagree, whether there even was a prospective juror with the surname Garcia. Because the name "Garcia" appears in co-defendant's counsel's second

reiteration of the Hispanic *venire* members allegedly struck for discriminatory reasons, while Rodriguez's name is missing from that list, the most logical explanation, and the one suggested by the State, is that co-defendant's counsel erroneously substituted the name "Garcia" for "Rodriguez." Because Galarza has the burden of demonstrating his habeas

identified each of these members of the *venire* in arguing his *Batson prima facie* case to the court. After the prosecutor proffered race-neutral explanations for each of these five prospective jurors, one of the defense counsel again objected to the striking of these five individuals.[6] Defense counsel thus sufficiently pursued the *Batson* challenges as to these five potential jurors.

The dissent would find that Galarza is procedurally barred from raising his *Batson* challenges as to these five prospective jurors because he did not renew his objection after the trial court made its incomplete findings as to whether it credited the race-neutral explanations for each of these strikes. *See dissent* at 642. The dissent's waiver analysis, however, turns our habeas law on its head.

■■■■ We have repeatedly stated that in order for federal habeas review to be procedurally barred, a state court must actually have relied on a procedural bar as an independent basis for its disposition of the case, and the state court's reliance on state law must be unambiguous and clear from the face of the opinion. *See, e.g., Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 809 (2d Cir.2000); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir.2000). We apply a presumption against finding a state procedural bar and "ask not what we think the state court actually might have intended but whether the state court plainly stated its intention." *Jones*, 229 F.3d at 118. We have found a state court's reliance on a

state procedural bar to be ambiguous, and thus refused to invoke a procedural bar, where although it appeared that the defendant failed to object sufficiently at trial, the state court rejected defendant's claims on appeal as "either meritless or unpreserved." *Tankleff*, 135 F.3d at 247 (internal quotation marks omitted).

Despite the dissent's suggestion otherwise, no genuine ambiguity can be read into the Appellate Division's holding; the court explicitly and only addressed the merits.[7] *See LaFontaine*, 190 A.D.2d at 610, 594 N.Y.S.2d 986. Even assuming *arguendo* an ambiguous reference to a state procedural bar by the Appellate Division existed, the dissent's analysis would require us to disregard our established precedent that such an ambiguity is insufficient to preclude our review of a habeas petition.

Beyond disregarding our established precedent, the dissent takes its analysis one dangerous step further. The dissent would invoke a procedural bar where the state court chose not to do so and would have this Court independently examine whether a procedural bar exists under state law. Rather than respecting the grounds of comity and federalism upon which the adequate and independent state grounds doctrine is based, *see Jones*, 229 F.3d at 117, the dissent would have us review the state court's decision to reach the merits and would force us to sit as a state court interpreting state procedural

---

claims by a preponderance of the evidence, *see Gaines v. Kelly*, 202 F.3d 598, 601 (2d Cir.2000), we find Galarza cannot meet his burden with regard to his *Batson* claim as to "Garcia" based on the record before us.

6. Defense counsel specifically objected to the prosecutor's explanation for striking Rodriguez and generally objected to the prosecutor's striking of the other prospective jurors.

7. The Appellate Division's statement that "[t]o the extent that either defendant has preserved a record of the jury selection *voir dire*," *LaFontaine*, 190 A.D.2d at 610, 594 N.Y.S.2d 986, can only fairly be read as a reference to the fact that the entire *voir dire* was not transcribed, and not, as the dissent suggests, a reference to defendant's failure to object again after the trial court made its *Batson* ruling. *See dissent* at 642.

rules in § 2254 habeas cases before us. This is a step we should not take.

■■■■ We have no quarrel with the need for contemporaneous objections. Unlike the dissent, however, we decline to create a procedural requirement that a party must repeat his or her *Batson* challenges three times at trial in order to avoid a procedural bar. Similarly, although we agree with the dissent that a party must raise his or her *Batson* challenges in a manner that would allow a trial court to remedy the problem at trial, we find Galarza's repeated objections did so. The dissent's reliance on *McCrory v. Henderson*, 82 F.3d 1243, 1244–45 (2d Cir. 1996), a case where the defendant raised his *Batson* challenges for the first time *over three months after the trial was completed*, is misplaced. In contrast, Galarza and his co-counsel objected twice prior to the jury being empaneled. Under these circumstances, we disagree with the dissent that the "blame" for the trial court's failure to adjudicate whether it credited each of the race-neutral reasons proffered by the prosecutor "lies squarely with Galarza." *See dissent* at 641. We decline to invoke a procedural bar which the state courts chose not to invoke, and therefore, find that Galarza's *Batson* challenges as to Felix, Valez, Vasquez, Vargas, and Rodriguez were sufficiently preserved for collateral review.[8]

## IV. *Exhaustion*

■■■■ The magistrate judge further determined that even if defense counsel had not waived Galarza's *Batson* challenges at trial, Galarza was procedurally barred from raising his *Batson* challenges as to Valez, Vasquez, and Felix. The magis-

trate judge stated that Galarza had only preserved for collateral review his challenges to the striking of Garcia, Rodriguez, and Vargas because only those challenges were raised in Galarza's direct appeal from his conviction. We disagree.

■■■■ In order to preserve an issue for collateral review, a habeas petitioner must exhaust all available state court remedies by "fairly present[ing]" his claims to the state courts. *Daye v. Attorney General of the State of New York*, 696 F.2d 186, 191 (2d Cir.1982) (en banc) (internal quotation marks omitted). "In order to have fairly presented his federal claims to the state courts the petitioner must have informed the state court of both the factual and the legal premises of the claim he asserts in federal court." *Id.*

Galarza's brief on direct appeal contained the following in the "Questions Presented" section: "Whether appellant was denied equal protection of the law when the trial assistant used her peremptory challenges to strike the first *five or six Latino–Americans* from the jury ...." (emphasis added). Similarly, the heading to the section of Galarza's brief concerning the *Batson* challenges referred to the prosecutor's striking of five or six Hispanic members of the *venire*. More importantly, the "Statement of the Facts" section of the brief described the prosecutor's use of peremptory challenges against each of the challenged prospective jurors, including Valez, Vasquez, and Felix (the *Batson* challenges that the magistrate judge determined Galarza was procedurally barred from raising). In his brief, Galarza argued that the prosecutor's proffered explanations as to each of the other potential

---

**8.** We also note that the dissent's discussion of the "substantial" evidence against Galarza, which, according to the dissent, "suggests that Galarza's conviction was not tainted by any racial bias fostered" by the prosecutor might be relevant to a harmless error analysis. *See dissent* at 644. We have made clear, however, that a *Batson* error "is a structural error that is not subject to harmless error review." *Tankleff*, 135 F.3d at 248.

jurors were insufficient, particularly as to Rodriguez and Vargas.[9] Accordingly, we find that Galarza exhausted his *Batson* claims with respect to prospective jurors Felix, Valez, Vasquez, Vargas, and Rodriguez.

## V. *The Batson Analysis*

■ Because we find that Galarza did not waive his *Batson* claims as to Felix, Valez, Vasquez, Vargas, and Rodriguez, we must examine whether the trial court properly analyzed each of these challenges. After defense counsel raised the *Batson* issues, the trial court required the prosecutor to offer race-neutral explanations for each of the challenged peremptory strikes. Thus, the court sufficiently met its obligations under *Batson* steps one and two. *Cf. Hernandez v. New York*, 500 U.S. 352, 359, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) ("Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a *prima facie* showing becomes moot."); *Jordan*, 206 F.3d at 200 (stating that "a trial judge may rule on a *Batson* application even in the absence of a *prima facie* showing of discrimination"). The only issue in this case is whether the trial court adequately fulfilled its obligations under the third step of the *Batson* analysis—to adjudicate the credibility of the race-neutral explanations for the challenged peremptory strikes and make an ultimate ruling as to discrimination—for each of these five challenged prospective jurors. *See Jordan*, 206 F.3d at 200.

The trial court explicitly credited the prosecutor's race-neutral explanation for striking Vasquez and Valez, namely, that they had problems understanding. Because the trial court's factual findings regarding these two individuals are entitled to a presumption of correctness, ·see 28 U.S.C. § 2254(d) (1994), and are supported by the record, we agree with the district court's determination that Galarza's *Batson* claims as to Vasquez and Valez are without merit.

■ The same cannot be said of Galarza's *Batson* challenges as to the striking of Rodriguez, Felix, and Vargas. The trial court did not explicitly rule whether it credited the prosecutor's proffered explanations for striking these individuals. The court made no mention of Rodriguez in its *Batson* ruling. The trial court's sole comment with respect to Felix was that it was "mystified that somebody who is in this line of work, doesn't know Felix a[sic] Hispanic name." It is unclear whether, by this statement, the court discredited the prosecutor's assertion that she did not think Felix was Hispanic or whether it credited the prosecutor's assertion but was surprised that she did not know Felix was a Hispanic surname. The court also did not explicitly rule whether it credited the prosecutor's assertion that she struck Vargas because he was "soft-spoken" and because she "did not feel comfortable" with him. Instead, the court stated that either side could have struck Vargas for cause.

The fact that the trial court failed to rule on the credibility of the prosecutor's race-neutral explanations as to Rodriguez, Felix and Vargas is further evidenced by the court's final statement when ruling on the *five or six Batson* challenges:

> Since I am satisfied that *at least three* of them have certain articulable [sic] reasons, I am not going to stop the trial. I am not going to force one or all of these

---

9. We note that the State responded to Galarza's *Batson* claims with respect to each of the challenged jurors in its brief in opposition to Galarza's direct appeal.

people who were challenged to be seated over prosecution's objections.

(emphasis added) Two of these three appear to have been Vasquez and Valez, but it is unclear which of Rodriguez, Felix and Vargas was the third. Moreover, the court's comments not only evidence that the court failed to adjudicate the credibility of the race-neutral explanations offered by the prosecutor for *each* of the challenged prospective jurors, *see Jordan*, 206 F.3d at 200; *Barnes*, 202 F.3d at 156–157, but also strongly suggest that the trial court *did not credit* the prosecutor's race-neutral explanations for striking two or three of the challenged prospective jurors. In our view, the trial court's statements also might imply that it was unwilling to make the "ultimate determination on the issue of discriminatory intent," *Jordan*, 206 F.3d at 200 (internal quotation marks omitted), because of a stated reluctance "to stop the trial." Under these circumstances, we find that the trial court failed to discharge its duties under *Batson*.[10]

▮ Although the factual findings of state courts are generally presumed to be correct in habeas proceedings in federal court, *see supra* Section I, this presumption is not applicable to the state court's determinations as to prospective jurors Rodriguez, Felix, and Vargas. Because the trial court failed to resolve the factual issue of whether it credited the race-neutral explanations for striking each of these three potential jurors, the presumption of correctness does not apply to its *Batson* rulings as to these individuals. *See* 28 U.S.C. § 2254(d)(1) (1994); *Ford v. Wainwright*, 477 U.S. 399, 410, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986) (stating that when a state court does not resolve the merits of a

factual issue, there is no "determination to which that presumption of correctness could be said to attach"); *Campaneria v. Reid*, 891 F.2d 1014, 1019 (2d Cir.1989) (stating that "the presumption of correctness does not adhere in a case in which the state court has not actually resolved the merits of a factual dispute"). Similarly, the Appellate Division's factual determination that the trial court credited the prosecutor's racially neutral reasons for the peremptory strikes of these three prospective jurors is not "fairly supported by the record," and, therefore, is also not entitled to a presumption of correctness. 28 U.S.C. § 2254(d)(8); *see also Williams v. Bartlett*, 44 F.3d 95, 99 (2d Cir.1994) (finding that state appellate court's factual determination was not entitled to presumption of correctness because it was not supported by the record); *Solomon v. Smith*, 645 F.2d 1179, 1185 n. 2 (2d Cir.1981) (agreeing with district court's "assessment that the state court's determination is not fairly supported by the record as a whole, and thus is not entitled to a presumption of correctness under 28 U.S.C. § 2254(d)").

▮ Because we find that the trial court failed to fulfil its obligations under *Batson* as to prospective jurors Rodriguez, Felix, and Vargas, we vacate the district court's denial of Galarza's habeas petition and remand the matter to the district court. We leave to the district court the determination of whether to expand the record as it may deem appropriate to resolve Galarza's *Batson* claims as to these three jurors, or whether to return the matter, through the device of a conditional writ, to the state court for reconsideration. *See Howard v. Senkowski*, 986 F.2d 24, 30

10. Our holding should not be read, however, as requiring a talismanic recitation of specific words in order to satisfy *Batson*. This may well have been a different case if the trial court's review of Galarza's *Batson* challenges culminated in a general crediting of the prosecutor's race-neutral explanations or possibly even if the trial court had merely stated that it rejected each of Galarza's *Batson* claims.

(2d Cir.1993) (remanding *Batson* claim to district court for expansion of the record or to issue a conditional writ). We take judicial notice that the trial judge is still alive, and we therefore disagree with the dissent that "in all probability, this case will have to be retried or Galarza released." *See dissent* at 643.

## CONCLUSION

We find that with respect to three of Galarza's *Batson* challenges, the trial court failed to adjudicate whether it credited the race-neutral reasons proffered by the prosecutor before denying the challenges. We therefore vacate the district court's denial of Galarza's habeas petition and remand his *Batson* claims as to these three prospective jurors to the district court for further proceedings consistent with this opinion.

JOHN M. WALKER, Jr., Chief Judge, dissenting:

Unlike the majority, I believe that, by failing to object at trial to the deficiencies in the trial court's findings on his challenge under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), petitioner-appellant Galarza has forfeited his claim based on those deficiencies.[1] Accordingly, I respectfully dissent.

This case is a paradigmatic example of the value of timely objection to asserted error. Eleven years after the fact and several institutional levels removed from the state trial court, Galarza now puts us to the task of reconstructing, from an opaque record, the jury-selection process and the prosecutor's state of mind. I agree with the majority that the trial court

failed to make contemporaneous evaluations of the prosecutor's race-neutral explanation for her allegedly race-based strikes, as we have repeatedly required. *See ante* at 635 (citing *Jordan v. Lefevre*, 206 F.3d 196, 200 (2d Cir.2000), *Barnes v. Anderson*, 202 F.3d 150, 156–57 (2d Cir. 1999), and *United States v. Alvarado*, 923 F.2d 253, 256 (2d Cir.1991)). I differ with the majority, however, in its decision to remand for further proceedings. I see no need to do so because the blame for Galarza's—and our—predicament lies squarely with Galarza, who failed to object to the trial court's error.

We have required parties to raise *Batson* challenges during jury selection precisely because of the difficulty of reconstructing the prosecutor's state of mind after the fact and the trial court's ability to remedy any *Batson* violation immediately by seating jurors over the prosecutor's strikes or beginning jury selection anew. *See McCrory v. Henderson*, 82 F.3d 1243, 1246–48 (2d Cir.1996). These familiar policies extend beyond the *Batson* context; they form the foundation of our traditional reluctance to review claims of error not raised below. In addition to allowing the trial court to act in the first instance, potentially correcting the error and obviating the need for an expensive, time-consuming, and disruptive appeal, timely objection provides a record from which appellate courts can better assess the trial court's reasoning, discourages sandbagging and strategic behavior by trial counsel, and provides the prevailing party with notice of the objector's claims of error.

---

1. Although use of the term "waiver" is more common in this context, "forfeiture" better describes a party's failure to preserve a claim of error. "Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'" *United States v. Olano*, 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)).

The majority stops short of the mark in its analysis of whether the error was preserved, notwithstanding the logic of *Batson* and our decision in *McCrory*. Galarza initially objected to the prosecutor's strikes, claiming that they were race-based. He (or a co-defendant) then objected to the prosecutor's race-neutral explanation for the strikes. But he and his co-defendants remained silent when the trial court made its inadequate response. Notwithstanding that the trial court plainly failed to address all of the challenged strikes, Galarza simply let the jury be empaneled and the trial proceed.

In my view, Galarza's failure to object is fatal to his claim. As the majority aptly describes, we have repeatedly held that a trial court must make findings about the prosecutor's intent with respect to each of the challenged peremptory strikes. Those findings are an integral part of the three-step *Batson* process, as outlined in *Batson* itself. There the Supreme Court stated that after the prosecutor explains the challenged strikes, "[t]he trial court will then have the *duty* to determine if the defendant has established purposeful discrimination." *Batson*, 476 U.S. at 98, 106 S.Ct. 1712 (emphasis added). Like any trial-court error, where the trial court neglects its duty in whole or in part, it falls to the aggrieved party to make its objection known immediately so that the court can rectify the error or clarify that it intends to adhere to the allegedly erroneous decision and thereby make a record for appeal. Accordingly, New York state courts have held that a *Batson* claim is not preserved for review where the defendant failed to object to the trial court's acceptance of the prosecutor's explanation. *See People v. McLeod*, 722 N.Y.S.2d 507, 508–09 (App. Div.2001). We should take this opportunity to adopt such a salutary rule ourselves.

Although the Appellate Division's decision in Galarza's direct appeal suggested that Galarza had not preserved his *Batson* challenge, *see People v. LaFontaine*, 190 A.D.2d 609, 594 N.Y.S.2d 986, 986 (App. Div.1993), the decision is not sufficiently clear on this score to serve as an adequate and independent state procedural bar to Galarza's petition. *See Harris v. Reed*, 489 U.S. 255, 263–64, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989). But in any event, my belief that Galarza's *Batson* claims are forfeited is not predicated on the habeas doctrine of procedural bar, as the majority contends, but rather on the *Batson* decision itself.

*Batson* plainly necessitates some form of objection: without some objection, the tripartite, burden-shifting framework established by the Court would never be triggered. Beyond sketching that basic framework, however, the *Batson* Court left lower courts considerable leeway to decide "how best to implement [the Court's] holding." 476 U.S. at 99 n. 24, 106 S.Ct. 1712. Accordingly, in *McCrory*—which, like the present case, was before us on collateral review-we relied on *Batson* itself, not procedural bar, to hold that McCrory had forfeited his *Batson* claim by raising it after completion of jury selection. *See McCrory*, 82 F.3d at 1247. *McCrory* undertook the work of "implement[ing]" *Batson*'s holding, and we should continue that work today by requiring that a party complaining of a *Batson* violation renew his or her objection to an allegedly erroneous ruling by the trial court.

As discussed above, the traditional policies underlying forfeiture of unpreserved error (some of which were relied on by the *McCrory* court) support such a requirement. Perhaps more important in the *Batson* context, however, renewing the objection is essential to vindicating the jurors' interests in nondiscriminatory jury selection—unquestionably one of the principal purposes served by the *Batson*

rule. *See Powers v. Ohio*, 499 U.S. 400, 413–14, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991); *Allen v. Hardy*, 478 U.S. 255, 259, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986); *Batson*, 476 U.S. at 87, 106 S.Ct. 1712. Correction of a *Batson* error during jury selection is the only way to vindicate that interest; retrial or release after appeal will not allow the struck jurors to be seated or compensate them in any way for the discrimination they have suffered. From the juror's perspective, then, correction on appeal can serve only to deter future prosecutorial misconduct, which provides the individual aggrieved juror no redress whatsoever. It follows that the failure to object in a timely fashion to the trial court's erroneous *Batson* ruling will ensure that improperly struck jurors are not seated.

In the case at bar, there is little doubt that, had Galarza objected to the trial court's half-hearted conclusions, the court would have done the following: it would have seated none, some, or all of the struck jurors and made the required findings of the prosecutor's intent with respect to each struck juror not seated, or it would have started jury selection anew. A few choice words from Galarza's counsel, who properly should bear responsibility for this debacle, would have saved years of direct and collateral review by avoiding this problem altogether.

It seems clear to me, if not to the majority, that, in all probability, this case will have to be retried or Galarza released. Although the majority remands the case to the district court, presumably to make an independent assessment of the prosecutor's race-neutral justifications, I fail to see how the district court is in any better position to evaluate what occurred at trial than we are. It is thus highly likely that the district court will be forced to grant a conditional writ.

It also seems plain to me that, as a practical matter, grant of the conditional writ is not a realistic invitation to the state trial court to make findings now, nearly eleven years after the fact, about the prosecutor's animus in making her strikes.[2] We have previously noted, in terms applicable here, that on remand,

> the trial court might encounter some difficulty recalling the circumstances of the jury selection and might conclude that examination of the record, supplemented by such further hearing on remand as [the court] deems appropriate, may not yield a satisfactory basis for determining the [non-movant]'s state of mind when the jury was selected. If [the court] concludes that the passage of time has unduly impaired [its] ability to make a fair determination of the [non-movant]'s intent, [the court] may so state, in which event the ... [c]ourt shall order a new trial.

*Barnes*, 202 F.3d at 156 (quoting *Alvarado*, 923 F.2d at 256) (alterations in original). Moreover, with an unsatisfactory and aged record and "with retrial hampered by problems of lost evidence, faulty memory, and missing witnesses," *Allen*, 478 U.S. at 260, 106 S.Ct. 2878 (internal quotation marks omitted), such retrial may well lead to Galarza's release.

Release or retrial is a price society is willing to pay where we are confident that the error involved has fundamentally corrupted the accuracy of the trial or its fairness to the defendant. Of course, these are among the core values served by the Great Writ. *See Teague v. Lane*, 489 U.S. 288, 313, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989); *Stone v. Powell*, 428 U.S. 465, 491 n. 31, 96 S.Ct. 3037, 49 L.Ed.2d 1067

---

**2.** The majority responds to this point by noting that "the trial judge is still alive." *Ante* at 641. Nevertheless, this does not address the efficacy, more than a decade later, of the trial judge's revisiting his perceptions of the prosecutor's animus in making the strikes.

(1976). Although a *Batson* claim might conceivably implicate such values in a particular case, it frequently will not, and Galarza's *Batson* claim in particular does not do so. The evidence against him, as summarized by the magistrate judge, was quite substantial and indicates that the outcome in no sense turned on Galarza's Hispanic ethnicity:

> [Undercover police detective Nelson Vargas] testified that he made six separate purchases of heroin from petitioner inside petitioner's apartment.... In addition, Vargas testified to numerous personal and telephonic conversations with petitioner concerning the purchase of heroin, including ... the purchase of a full kilo of heroin.... [T]he prosecution introduced laboratory results regarding the actual drugs purchased, pen register records from petitioner's telephone, [and] intercepted conversations of co-defendant LaFontaine regarding the sale of heroin and cocaine....
>
> When petitioner was arrested, he had $2,400 in pre-recorded buy money on his person, and a search of his apartment yielded the following: thirty-nine glassine envelopes of cocaine and heroin; a bag of marijuana; LaFontaine's business cards; a telephone book with telephone numbers for [the co-defendants]; and drug paraphernalia including a triple beam scale, ink, a stamp pad and stamper used to mark envelopes of heroin, glassine envelopes, a strainer, lactose, plastic bags, and a glass crack pipe.

This evidence suggests that Galarza's conviction was not tainted by any racial bias fostered by a prosecutor's discriminatory use of peremptory strikes.[3]

At best, then, granting the writ in this case would serve only a deterrent function, discouraging prosecutors from making race-based strikes in the future. The Supreme Court, however, has expressed skepticism about the use of habeas where issuance of the writ could only deter misconduct in criminal prosecutions. *See Stone,* 428 U.S. at 492–94, 96 S.Ct. 3037 (concluding that the function of the Fourth Amendment's exclusionary rule is deterrence of police misconduct rather than protecting the trial's accuracy, and accordingly refusing to allow a trial court's failure to apply the rule to be raised on habeas review); *id.* at 491 n. 31, 96 S.Ct. 3037; *Allen,* 478 U.S. at 257–61, 106 S.Ct. 2878 (discussing the interests served by *Batson* and holding that the rule would not be applied retroactively to cases on collateral review). *But cf. Rose v. Mitchell,* 443 U.S. 545, 559–61, 99 S.Ct. 2993, 61 L.Ed.2d 739 (1979) (holding claim of discrimination in grand jury selection cognizable on habeas; declining to extend rationale of *Stone*). To my mind, this skepticism is sensible given, on the one hand, the insignificant incremental deterrent effect from application on habeas review and, on the other, competing values of finality and respect for state judgments. I firmly believe that any incremental deterrent effect of enforcing the *Batson* rule on collateral review is simply too attenuated to justify issuance of the writ here, where doing so would in no respect protect the individual petitioner's interest in the fairness and accuracy of his conviction.

For the foregoing reasons, I respectfully dissent.

---

**3.** As discussed above, application of *Batson* on appeal does nothing for the struck jurors whose interests are harmed by an attorney's discriminatory strikes. *A fortiori,* its application on collateral review will also fail to advance the jurors' interests in non-discriminatory jury selection.