John **CABRERA**, Petitioner,

v.

Victor **HERBERT**, Superintendent, Attica Correctional Facility,[1] Respondent.

No. 00–CV–0964 B.

United States District Court, W.D. New York.

Jan. 14, 2004.

1. Petitioner has failed to identify a proper respondent to his § 2254 habeas corpus petition. Petitioner has named as his respondent, Victor Herbert, who was the superintendent in custody of Petitioner when he filed this action. However, given that Petitioner is now incarcerated in the Southport Correctional Facility, the correct respondent therefore would be the Superintendent of the Southport Correctional Facility, Michael McGinnis. 28 U.S.C. § 2243. In light of Petitioner's *pro se* status and the fact that this in no way will prejudice Respondent, and in the interests of court efficiency, the Court will deem the Petition amended to change the name of Respondent to Michael McGinnis, Superintendent of the Southport Correctional Facility.

The Clerk of the Court is directed to terminate Victor Herbert as Respondent, add Michael McGinnis as the new Respondent, and revise the caption of this action accordingly.

Barbra A. Kavanaugh, New York State Attorney General's Office, Buffalo, NY, for Respondent.

John Cabrera, Collins, NY, pro se.

## DECISION AND ORDER

BIANCHINI, United States Magistrate Judge.

### I.  INTRODUCTION

Petitioner John Cabrera, acting *pro se,* commenced this action seeking habeas corpus relief under 28 U.S.C. § 2254.  Petitioner is an inmate at the Southport Correctional Facility.  In 1997, he was

convicted in a New York State court and sentenced to a term of imprisonment. He contends that his conviction was imposed in violation of his constitutional rights and should be vacated. This matter was referred to the undersigned by the Honorable David G. Larimer, United States District Judge, pursuant to 28 U.S.C. § 636(c), and is presently before the undersigned for a decision and order. (Docket No. 9).

## II. BACKGROUND

### A. Indictment

According to the testimony at trial, on May 10 and May 16 of 1996, Petitioner sold illegal narcotics to undercover New York State Trooper Laurie Kalicki ("Trooper Kalicki"). (T at 271–76).[2] Trooper Kalicki was assisting members of the Genesee County Local Drug Enforcement Task Force in an investigation of the City of Batavia, New York. (T. at 275–76). She is an undercover officer with the State Police Community Narcotics Enforcement Team ("C–NET"). (T. at 272–73).

According to Trooper Kalicki's trial testimony, she and a confidential informant named Todd Naylor ("Naylor") went to McNichol's Pub in Batavia, New York to meet Petitioner on May 10, 1996. (T. at 275–76). Naylor was a friend of Petitioner's. (T. at 274–75). Once at the bar, Naylor introduced Trooper Kalicki to Petitioner. (T. at 278). Trooper Kalicki agreed to purchase marijuana from Petitioner for $110.00. (T. at 279). Naylor, Trooper Kalicki and Petitioner then left the bar and went outside to Trooper Kalicki's car to complete the transaction. (T. at 279). While sitting in Trooper Kalicki's car, Petitioner offered to obtain cocaine for her if she was interested. (T. at 280). When Trooper Kalicki stated that she was interested, Petitioner went back into the

bar and returned shortly thereafter with three small clear bags containing a white powdery substance. (T. at 280). Trooper Kalicki took two bags. (T. at 280). Petitioner then stated that he needed Trooper Kalicki to drive him to another location to get the marijuana. (T. at 281). Once Petitioner obtained the marijuana, Trooper Kalicki drove him back to McNichol's Pub. (T. at 282).

After receiving what appeared to be marijuana and cocaine, Trooper Kalicki conducted field tests on both substances and turned them over to the Genesee County Drug Task Force. (T. at 283–86). The suspected cocaine and marijuana were subsequently forwarded to the Monroe County Public Safety Laboratory for analysis. (T. at 366–72). The suspected cocaine tested negative, but the marijuana tested positive. (T. at 366–72).

On May 16, 1996, Trooper Kalicki again went with Naylor to McNichol's pub to meet with Petitioner. (T. at 291–92). Trooper Kalicki asked to purchase cocaine from Petitioner, at which point the two left the bar and went outside to Trooper Kalicki's car. (T. at 292–93). She gave Petitioner the money for the cocaine and Petitioner gave her two small ziplock bags containing a white powdery substance. (T. at 293). Trooper Kalicki field tested the suspected cocaine and turned it over to the Genesee County Drug Task Force. (T. at 294–95). The suspected cocaine was then forwarded to the Monroe County Public Safety Laboratory for analysis where it tested positive for cocaine. (T. at374–76).

In August of 1996, a Genesee County grand jury issued Indictment Number 3871. That indictment charged Petitioner with Attempted Criminal Sale of a Controlled Substance in the Third Degree, in violation of New York Penal Law

---

**2.** References preceded by "T." are to the pages of the transcript of Petitioner's trial.

("N.Y.P.L.") § 110.00 and § 220.39(1) (McKinney 1998); Criminal Sale of Marijuana in the Fourth Degree, in violation of N.Y.P.L. § 221.40; Unlawful Possession of Marijuana, in violation of N.Y.P.L. § 221.05; Criminal Sale of a Controlled Substance in the Third Degree, in violation of N.Y.P.L. § 220.39(1); and Criminal Possession of a Controlled Substance in the Third Degree, in violation of N.Y.P.L. § 220.16(1).[3] Petitioner was arraigned before the Honorable Charles F. Graney, Genesee County Court Judge, on August 12, 1996.[4]

## B. State Trial Court Proceedings

The Honorable Michael F. Griffith, Genesee County Court Judge, presided over Petitioner's trial, which began on January 14, 1997. Prior to trial, Petitioner requested to proceed *pro se.* (T. of 11/27/96 at 6).[5] Judge Griffith granted Petitioner's request and directed his attorney to act as standby counsel in the event Petitioner needed help during the trial. (T. of 11/27/96 at 7–15). The jury returned its verdict on January 17, 1997. The jury found Petitioner guilty of all counts. (T. at 724–26).

Judge Griffith sentenced Petitioner on April 16, 1997. Petitioner was sentenced to concurrent indeterminate terms of imprisonment with a minimum of six years and a maximum term of twelve years for his conviction of Attempted Criminal Sale of a Controlled Substance in the Third Degree, Criminal Sale of a Controlled Substance in the Third Degree, and Criminal

Possession of a Controlled Substance in the Third Degree. (S. at 24).[6] Petitioner was also sentenced to concurrent determinate terms of one year for Criminal Sale of Marijuana in the Fourth Degree and fifteen days for Unlawful Possession of Marijuana. (S. at 24).

## C. State Appellate Proceedings

Petitioner appealed his conviction to the Appellate Division, Fourth Department of the New York State Supreme Court. Through his attorney, Petitioner argued: (1) that the trial court violated his due process right to proceed *pro se* by not providing him with open access to a law library; (2) that it was an abuse of discretion for the trial court to permit rebuttal on the issue of agency; (3) that the evidence offered on rebuttal was prejudicial and improper; (4) that it was error for the trial court to limit the defense's cross-examination of a prosecution witness; (5) that it was error for the trial court to sentence Petitioner without making his pre-sentencing report available to him one day before sentencing; and (6) that the court erred in failing to set aside the verdict.

In a decision issued on May 31, 1999, the Appellate Division unanimously affirmed Petitioner's conviction. *People v. Cabrera,* 259 A.D.2d 1007, 689 N.Y.S.2d 893 (4th Dep't 1999). On October 1, 1999, the New York Court of Appeals denied Petitioner leave to appeal. *People v. Cabrera,* 94

3. Unless indicated, all references to the N.Y.P.L. are to McKinney 1998.

4. After reviewing the transcript of Petitioner's arraignment, it does not appear that he ever formally entered a plea of not guilty. (Arraignment Transcript, August 12, 1996). However this error is harmless as it may be presumed from the fact that Petitioner went to trial that he would have plead not guilty. Moreover, in the instant Petition, there is no

allegation of any error in the arraignment proceedings.

5. References preceded by "T. of 11/27/96" refer to the transcript of a pre-trial Call Appearance found at Docket # 6, Appendix D, submitted to the Court by Respondent as part of Petitioner's state court records.

6. References preceded by "S." are to pages of the transcript of Petitioner's sentencing hearing held on April 16, 1997.

N.Y.2d 798, 700 N.Y.S.2d 431, 722 N.E.2d 511 (1999).

## D. Federal Habeas Corpus Proceedings

Petitioner commenced this action on October 16, 2000 by filing a *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Thereafter, the parties filed submissions outlining their respective positions.

## III. DISCUSSION

### A. Federal Habeas Corpus Standard

Federal habeas corpus review of a state court conviction is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under AEDPA, federal courts must give substantial deference to a state court determination that has adjudicated a federal constitutional claim "on the merits." 28 U.S.C. § 2254(d); *Sellan v. Kuhlman,* 261 F.3d 303, 309–10 (2d Cir. 2001). Specifically, AEDPA requires that where a state court has adjudicated the merits of a Petitioner's federal claim, habeas corpus relief may not be granted unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In *Williams v. Taylor,* 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the Supreme Court defined the phrases "contrary to" and "unreasonable application of" clearly established federal law. A state court decision is "contrary to clearly established federal law ... if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a

question of law or if the state court decides a case differently than [the Court] has on a set of materially indistinguishable facts." *Id.* A state court decision involves "an unreasonable application of" Supreme Court case law if it "identifies the correct governing legal principle from [the Court's] decisions but unreasonably applies that principle to the particular facts of [a] prisoner's case." *Id.*

■ While both AEDPA and its predecessor statute recognize that a presumption of correctness shall apply to state court findings of fact, *Whitaker v. Meachum,* 123 F.3d 714, 715 n. 1 (2d Cir.1997), AEDPA also requires a Petitioner to rebut that presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *LanFranco v. Murray,* 313 F.3d 112, 117 (2d Cir.2002). A presumption of correctness applies to findings by both state trial and appellate courts. *Galarza v. Keane,* 252 F.3d 630, 635 (2d Cir.2001); *Whitaker,* 123 F.3d at 715 n. 1.

■ If, however, the federal court cannot determine whether the state court has adjudicated a Petitioner's federal constitutional claims on the merits, the federal constitutional claims are considered as not having been determined on the merits and, as such, the federal court applies the pre-AEDPA, *de novo,* review standard, even where the petition was filed after the effective date of the statute. *See Sellan,* 261 F.3d at 314; *Boyette v. Lefevre,* 246 F.3d 76, 89, 91 (2d Cir.2001).

■ A federal claim is adjudicated on the merits when the state court "(1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment." *Sellan,* 261 F.3d at 312. In other words, in order to invoke the deferential standards of 2254(d)(1), "the state court need only dispose of the Petitioner's federal claim on substantive grounds, and reduce that dis-

position to judgment. No further articulation of its rationale or elucidation of its reasoning process is required." *Aparicio v. Artuz*, 269 F.3d 78, 93–94 (2d Cir.2001) (citing *Sellan*, 261 F.3d at 312). If there is no indication that the federal claim has been decided on procedural grounds, the federal claim will be deemed to have been adjudicated on the merits. *Brown v. Artuz*, 283 F.3d 492, 498 (2d Cir.2002).

### B.  Analysis

■ Under the Constitution, a correctional facility must provide an inmate with meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817, 828, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). Petitioner argues that his conviction should be set aside because the trial court did not provide him with adequate access to the courts.[7] Specifically, Petitioner contends that he was denied access to the courts because the trial court did not provide him with direct or adequate access to legal research.

■ In order to state a claim for denial of access to the courts a petitioner must show that he has suffered or will imminently suffer actual harm, i.e., that he was "hindered in the pursuit of a legal claim" due to the actions of prison officials. *Lewis v. Casey*, 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996), *see also Nicholson v. Murphy*, No. 02–CV–1815, 2003 WL 22909876, *6, 2003 U.S. Dist. LEXIS 22165, *11–12 (D.Conn. Sept. 19, 2003)(stating that inmates must show actual injury in order to bring a claim for denial of access to the courts). "The identification of a purely theoretical deficiency in an institution will not suffice." *Benja-*

*min v. Fraser*, 343 F.3d 35, 51 (2d Cir. 2003).

■ This court finds that Petitioner's claim must be reviewed under the AEDPA "unreasonable application standard." The Appellate Division specifically addressed and rejected Petitioner's access to courts claim in its decision. *Cabrera*, 689 N.Y.S.2d at 893. The court noted that "[t]here is no 'abstract, free-standing right to a law library or legal assistance.'" *Id.* (citing *Lewis*, 518 U.S. at 343, 116 S.Ct. 2174). With respect to Petitioner's claim, the Appellate Division found that the trial court "properly fashioned a reasonable alternative 'to assure meaningful access to the courts.'" *Id.* (citing *Bounds*, 430 U.S. at 830, 97 S.Ct. 1491).

In *Bounds*, the Supreme Court held that making a law library available to inmates was merely "one constitutionally acceptable method to assure meaningful access to the courts," and that there are "alternative means to achieve that goal." *Id.* It is the capability of seeking access to and redress through the courts "rather than the capability of turning pages in a law library, that is the touchstone." *Lewis*, 518 U.S. at 357, 116 S.Ct. 2174.

The record in this case shows that Petitioner was able to seek access to and redress through the courts. Before trial, Petitioner requested that he be allowed to represent himself. (T. of 11/27/96 at 5–16). After reviewing Petitioner's educational background, experience with the law, the consequences of proceeding *pro se*, and his general capacity to knowingly waive his right to counsel, the trial court granted his

---

7. In his Petition, Petitioner asserts two grounds for relief, (1) denial of access to the courts and (2) actual injury resulting from the denial of access to the courts. However, these are not, in actuality, distinct claims. In order to state a claim for denial of access to the courts, a petitioner must show as a matter of proof that an actual injury has occurred as a result of that denial. *Lewis v. Casey*, 518 U.S. 343, 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). Accordingly, this Court finds that Petitioner asserts a single claim for habeas corpus relief—a claim that he was deprived of his constitutional right to access the courts.

request. (T. of 11/27/96 at 6–16). However, the trial court appointed standby counsel for Petitioner to consult with at any time he had a question during the proceedings. (T. of 11/27/96 at 15–16). Additionally, standby counsel would be in attendance at all court appearances and would be available to take over as lead counsel should Petitioner change his mind about proceeding *pro se. Id.; see Spates v. Manson*, 644 F.2d 80, 84 (2nd Cir.1981)(holding that right of access to courts not infringed where prisoners supplied with an inadequate prison library, so long as they were provided with appointed counsel); *see also Benjamin v. Kerik*, 102 F.Supp.2d 157, 164 (S.D.N.Y.2000)(holding the same). The trial transcript reflects that Petitioner did consult regularly with standby counsel. (T. at 304–305, 481, 570, 621–22). Because Petitioner complained that the law library at his facility was inadequate, the trial court also directed standby counsel to provide legal research materials to Petitioner that were unavailable to him in the law library at his facility. (T. of 11/27/96 at 27–30).

Under these circumstances, it is clear that the Appellate Division's decision affirming Petitioner's conviction and holding that Petitioner was provided with access to the courts is neither "contrary to" nor "an unreasonable application of" clearly established federal law. Accordingly, Petitioner's claim for habeas relief on this ground is DENIED.

## IV. CONCLUSION

For the foregoing reasons, this Court finds that Cabrera's Petition for a Writ of Habeas Corpus is without merit. Therefore, the Petition for a Writ of Habeas Corpus is denied.

This Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith, and therefore denies leave to appeal as a poor person. *Coppedge v. United States*, 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). Any request to proceed on appeal as a poor person should be directed to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure. Petitioner must file any notice of appeal with the Clerk's Office, United States District Court for the Western District of New York, within thirty (30) days of the date of the judgment in this action.

## V. ORDERS

IT HEREBY IS ORDERED that the Petition for a Writ of Habeas Corpus (Docket No. 1) is DENIED.

FURTHER, that a certificate of appealability is DENIED.

FURTHER, that the Clerk of this Court is directed to terminate Victor Herbert as Respondent, add Michael McGinnis, the Superintendent of the Southport Correctional Facility, as the new Respondent, and revise the caption of this action accordingly.

FURTHER, that the Clerk of this Court is directed to take the necessary steps to close this case.

SO ORDERED.